(67 N. W. Rep. 300.)

---

ALEXANDER ANDERSON *vs.* FIRST NAT'L BANK OF GRAND FORKS.

Opinion filed April 30th, 1896.

**National Banks—Sale of Collateral—Conversion.**

> Where a national bank holds notes of its debtor as collateral to his indebtedness to the bank, it may lawfully act as agent for him in the sale of such notes to a third person, such agency being merely incidental to the exercise of its conceded power to collect the claim out of such collateral notes. But, ordinarily, a national bank may not engage in the business of agency. The fact that its act in assuming to represent another as agent is *ultra vires* will not exempt it from those rules of law which regulate the duties of an agent to his principal. It cannot plead its own violation of law to justify a breach of trust. Accordingly, *held*, that a national bank which had assumed to sell for another certain notes owned by him, but had, instead of so selling them to a third person without his knowledge, sold them to itself, had violated its duty to the owner, the same as if it had full power under the law to act as such agent; and was, therefore, guilty of a conversion of such notes.

**Election of Remedies—Waiver of Tort.**

> Where an agent, without the consent of his principal, sells to himself at the price he was authorized to sell to a third person, the waiver by the principal of his right to proceed as for tort founded on the conversion by the agent of his property in purchasing the same himself, and his electing to sue the agent on an implied contract of purchase by the agent, does not constitute a ratification of the original act of the agent in purchasing himself so as to limit the recovery to the price specified; but it is merely a waiver of the element of tort in the transaction. The agent is liable on the theory of the purchase by him of the property at the time of the conversion at the then value of the property, irrespective of the price for which he was authorized to sell to a third person.

Appeal from District Court, Grand Forks County; *Templeton*, J.

Action by Alexander Anderson against the First National Bank of Grand Forks. From an order directing a verdict for defendant, plaintiff appeals.

Reversed.

*Phelps & Phelps*, for appellant.

*Burke Corbett*, for respondent.

Corliss, J.   Banquo's ghost was not more persistent than is this litigation.   It will not down, either in the court below or in this tribunal.   Thrice has it been tried in the District Court, and it is now for the third time before us on appeal.   The facts have been so fully developed in the opinions written on the two former appeals (4 N. D. 182, 59 N. W. 1029, and 5 N. D. 80, 64 N. W. 114) that it is unnecessary to do more at this time than to refer to those opinions, and point out the new elements which on the third trial were introduced into the case.   On this last trial, as on the previous trials, the court directed a verdict for the defendant. It is this ruling of the District Court which is challenged on this appeal.   Since the case was before us last, the pleadings on both sides have been amended.   The plaintiff has elected to treat the act of the defendant in assuming to sell to itself, in violation of its duty to the plaintiff as his agent, as a conversion of the notes, and has also elected to waive the tort, and sue on the theory of an implied promise on the part of the defendant to pay the value of these notes at the time of their conversion.   The defendant, by its amended answer, now for the first time asserts that it was not acting as agent, did not intend to act as agent, and was not regarded by the plaintiff as being his agent in the transaction leading up to the alleged sale of the property in question.   No new facts were disclosed on the trial to support this utterly untenable theory.   The facts are precisely the same as they were when this case was before us the last time.   See 5 N. D. 80, 64 N. W. 114. We then held on these same facts that defendant was plaintiff's agent in the selling of the notes in question.   That fact, is, therefore, no longer open to controversy.   At all times up to the period when the defendant's answer was amended, it had conceded that it was agent, and it defended the case solely on the ground that it had accounted for and paid over to plaintiff all the net proceeds of the sale effected by it as such agent.   The agency was, in effect, admitted in the original answer.   It formed the corner stone of defendant's argument in this court on the first appeal, and was not questioned by defendant's counsel in brief or

oral argument on the second appeal. But we do not need to rest our ruling on this point on the ground that the question is settled, or on the further ground that defendant has estopped itself by its own solemn admission from raising the point. The evidence adduced on this last trial not only utterly failed to support the defendant's theory in this regard, but, on the contrary, conclusively established the agency as a fact. As before stated, that evidence was the same as on the previous trials, and was the same evidence that was before us on the two former appeals. We might, without further discussion of this question here, refer to the opinions on those appeals as showing beyond doubt that both plaintiff and defendant understood, and had reason to understand, that defendant was acting as plaintiff's agent in the sale of the plaintiff's notes. But in view of the fact that the learned trial judge, in directing a verdict for defendant, placed his ruling on the ground that no agency had been established, we will briefly refer to the evidence on this point. It is undisputed that whatever arrangement was made between defendant and plaintiff is embodied in certain letters and telegrams which passed between them. On September 14, 1891, defendant wrote plaintiff that, if he would allow defendant a small commission, it would try and place the paper for him. This letter not being answered by plaintiff, the defendant telegraphed plaintiff as follows on October 3, 1891: "Wire us your best offer, so we can advise a party who said that he would hold his money till we heard from you." Plaintiff having telegraphed defendant that he would allow a discount of $500, the defendant assumed to make the sale under these instructions, and on October 7th sent him a statement, in which it charged a commission of $35 for selling the notes. To assert, in view of these communications by defendant to plaintiff, that it did not assume to act as agent for him, and that he did not so understood these communications, is to trifle with and pervert the plain meaning of the language deliberately employed by the defendant. The utter grotesqueness of this new theory of defendant's counsel, in view of the facts, is brought out very

prominently in the amended answer.   In that answer it is alleged
that defendant believed, and was justified in believing, that
plaintiff intended said telegram (*i. e.* the one offering to allow a
discount of $500, following defendant's communications to plain-
tiff which have been already referred to) as an offer to sell said
notes to defendant.   In the next paragragh defendant avers that,
acting on this belief, it wrote the letter of October 7, 1891, accom-
panied by the statement, as part of it, in which defendant charged
the plaintiff a commission of $35 for making the sale.   The alle-
gation, therefore, is that, believing that plaintiff understood that
defendant was acting for itself, and not for him, it nevertheless
charged him a commission, on the theory that it was acting for
him; and immediately reported to him the fact that it had made
such charge.   That defendant assumed to act as such agent for
plaintiff cannot be doubted.   But it is contended that a national
bank cannot legally engage in the business of acting as agent for
another in the sale of securities such as those which were owned
by the plaintiff.   But that is not the precise question before the
court.   It ignores the conceded fact that at the time this corres-
pondence was had the defendant held plaintiff's note for $2,000,
which it had discounted in the regular course of business.   The
seven notes in question belonging to plaintiff were also held by
the bank as collateral to plaintiff's indebtedness on that note.
The bank, as pledgee, could not sell these notes.   It could only
collect them.   Certainly, in furtherance of its undoubted power
to collect a debt from one whose paper it had discounted, it
could, with the assent of the debtor, act as his agent in the dispo-
sition by sale of collateral held by it to secure such debt.   In
doing so in this case the bank was not engaged in the general
business of agency.   The bank merely acted as agent in the
particular case under special circemstances, when the exercise of
power to act as agent was merely incidental, and entirely subor-
dinate to the exercise of the conceded power of every national
bank to take all the steps which may be necessary, appropriate,
or useful in the collection of its claims against others.   To deny

to a national bank large incidental powers in the enforcement of such claims would be seriously to hamper and cripple them, and this, too, without necessity, and in the face of general principles. There is a wide difference between a bank engaging in the business of agency when the agency is not in furtherance of the powers conferred upon the bank, and on the other hand, its acting for a debtor of the bank under his authority in the disposition of collaterals held by the bank to secure the debt, when without such authority the bank would have had no power to make such disposition. We are of opinion that under the facts of this case the defendant, in assuming to act for plaintiff in the sale of these notes with his consent, kept entirely within the limits of its power. The whole drift of authority seems to us to support this view. *Shinkle* v. *Bank*, 22 Ohio St. 516-524; *Holmes* v. *Boyd*, 90 Ind. 332; *John A. Roebling Son's Co.* v. *First Nat. Bank of Richmond, Va.*, 30 Fed. 744; *Reynolds* v. *Simpson*, 74 Ga. 454; *Wylie* v. *Bank*, 119 U. S. 361, 7 Sup. Ct. 268; *McCraith* v. *Bank*, (N. Y. App.) 10 N. E. 862; *First Nat. Bank* v. *National Exch. Bank*, 92 U. S. 122; 1 Morse, Banks, § § 77, 78. The Wylie case appears to be nearly in point. The principle which underlies all the decisions cited is the principle which we apply in this cause. We hold that, as an incident of the conceded power of the bank to realize on security it held, it had power to act as agent for the plaintiff in effecting a sale thereof; thus enabling it to turn that security into cash to be applied on its claim. But we would reach no different conclusion even though we should assume that the act of the bank was *ultra vires*. It is one thing to assert that a bank cannot legally engage in the business of acting as agent. It is an entirely different thing to assert that when it has in fact assumed to act as agent it shall not be held to the ordinary duties and obligations which govern such a relation. A bank may repudiate its promise to act as agent when such promise is not binding, and in so doing it will incur no liability. So long as the matter remains executory, it can fall back upon the defense of *ultra vires*. But a widely different question is presented when it has executed or pretended

to execute the agency. So long as the business remains unfinished, the person dealing with the bank must take the risk of the refusal by the latter to proceed. He is bound to know that the act is *ultra vires*. But it is not a physical impossibility for a bank to act as agent. If it assumes to and does so act, and receives the proceeds of the sale, it must account for them as agent. It has undoubtedly violated the law by exercising powers not conferred upon it. But this violation can be taken advantage of only by the sovereign authority which created the bank. *Bank* v. *Butler*, 157 Mass. 548, 32 N. E. 909; *Bank* v. *Smith*, (S. D.) 65 N. W. 437; *Bank* v. *Hanson*, (Minn.) 21 N. W. 850; *Hennessy* v. *City of St. Paul*, (Minn.) 55 N. W. 1123. Indeed, in many cases this is the rule, although the act performed by the bank is in defiance of a positive statutory prohibition. *Bank* v. *Matthews*, 98 U. S. 621; *Bank* v. *Whitney*, 103 U. S. 99; *Thompson* v. *Bank*, 146 U. S. 240, 13 Sup. Ct. 66; *Bank* v. *Townsend*, 139 U. S. 67, 11 Sup. Ct. 496; *Bank* v. *Birch*, 130 N. Y. 221, 29 N. E. 127.

It will be noticed that the authorities hold that the bank itself can enforce a contract or obligation or security although in securing the cause of action or security it exercised a power not conferred. Surely, then, it should not itself be heard to urge its own violation of law as a defense to the contention that, having assumed to act as agent, it must live up to the common honesty which is required of all agents. Stripped of all disguise, the ruling of the court, if the decision herein was placed on that ground, is that the bank, which had induced another to believe that it was acting as agent for him, and who has therefore reposed full confidence in such bank, may urge its own unlawful usurpation of power as a justification for its betrayal of the trust reposed in it. If its first act, in assuming to represent the plaintiff in the sale, had been lawful, it would have been liable for its subsequent illegal act. But because both acts were illegal it is insisted, and seems to have been held in this case, and there is no liability whatever. On this theory, if one wrong is preceded by another, this fact makes right the last wrong. The defendant's lips are

sealed against a denial of the agency, and as a matter of fact it did act as agent for the plaintiff. A national bank cannot lawfully engage in the business of buying and selling merchandise, but if it in fact does buy merchandise it must pay for it. Yet in such a case it has exercised a power not vested in it. So if it does in fact act as agent it must act with fidelity, the same as all other agents, although in so acting it exercises a power not conferred upon it by the law. In neither case will the law allow it to plead its own want of power to absolve itself from the principles of common honesty. In both cases the sovereign can punish it by depriving it of its franchise as a corporation. One who employs a bank to act as agent for him places the same confidence in the bank that he would repose in a person whom he had trusted as agent. The fact that it may not be within the powers of the bank to act as agent has no tendency to shake the faith of the principal in the honesty of the agent's conduct. To him the assumption of the agency by the bank means that the latter is willing to take the risk of attack and overthrow by the sovereign for its exercise of power not granted, and not that the agent will betray the principal it has induced to trust it.

But it is urged that defendant's cashier, with whom all the communications were had, and by whom all the letters and telegrams in behalf of the bank were written, had no authority to bind the bank by agreeing to act as agent for the plaintiff. There are several answers to this contention. If, as we hold to be the law, it was under the circumstances of the case, within the power of the bank to act as agent for plaintiff in the sale of those notes as a means to a lawful end,—*i. e.* the collection of plaintiff's note for $2,000 held by the bank, by realizing on the collateral by a sale thereof,—then it was within the ordinary powers of the cashier, as the financial officer of the bank, charged with the custody and control of its funds and the collection of its claims, to enter into this arrangement on behalf of the bank that the bank should act for plaintiff in the sale of these notes. See 1 Morse, Banks, § § 152, 159. Besides, it appears that the bank had ratified his acts

in this respect. It has known from the inception of this case that the plaintiff claimed that the bank was acting as agent for him, and it has known on just what ground this claim was based. It has known for a long time that the plaintiff asserted that the defendant's cashier had acted for the bank in this whole transaction, and it has during this time known all the dealings between the parties purported to be with or on behalf of the bank; and yet it has made no effort to repudiate the act of its officer. It has never offered to restore the plaintiff's property to him. On the contrary, it has proceeded deliberately, with full knowledge of all the facts, to collect and exercise full control over these notes as owner. It is too late now for it to question the cashier's authority. It has ratified his acts. Indeed, it has not even taken the trouble, up to the present moment, to offer to give back to the plaintiff his property. After the bank had discovered what course its cashier had pursued, it could no longer keep the fruits of his acts without ratifying all he had done. Such ratification related back to the time when the cashier assumed to represent it, and rendered all his acts binding on the bank from their inception. Moreover, the defendant has deliberately set up in its answer that these letters and telegrams were sent out and received by the bank itself. There is no attempt to claim that the dealings were had with the cashier, and that he was not authorized to enter into them on its behalf. The defendant, in specific language, avers that whatever was done in the matter was done by the bank itself. By defendant's own amended answer, therefore, the question of the power of the cashier is eliminated from the case.

It is also insisted that the plaintiff, by waiving the tort, has ratified the sale by defendant to itself at the price specified by the plaintiff. This claim rests on an utter misconception of the effect of such a waiver. It is merely a relinquishment of the right to proceed as for a tort. The tort itself, so far as it gives rise to a cause of action, is not forgiven. The cause of action it created is not extinguished. The right to recover the value of

the property illegally appropriated by the wrongdoer to his own use is not destroyed. Only the form of the action is changed. The one injured by the tort stills holds unimpaired his right to recover the value of the property converted at the time of the conversion. He merely elects to treat the act of the tort feasor as a purchase by him at the then value thereof. The waiver of the right to proceed as for a tort has, and can have, no other legal effect.

The judgment of the District Court is reversed, and a fourth trial is ordered. All concur.