# JOHN F. WALD v. S. W. WHEELON and FARMERS STATE BANK OF TOWNER, NORTH DAKOTA.

## (147 N. W. 402.)

**State bank — customer — state law as to loan limit — knowledge of.**

1. A customer doing business with a state bank is charged with knowledge of the law relating to the amount that can be loaned to one person.

**Contract to perform unlawful acts — unenforceable — general rule.**

2. As a general rule, contracts to perform acts forbidden by express statute, or which subject the parties to punishment, are unenforceable. To this rule there are some exceptions.

**Legislative intent — statute — banks — individual loan — limitation — construction.**

3. Where the intent of the legislature in enacting a statute limiting the size of individual loans was to protect depositors and other customers of the bank, the law will be so construed as to give effect to the legislative intent.

**Contract for performance of criminal acts — action for damages for breach — case — established — illegal transaction.**

4. One of the tests applied to determine whether an action for damages can be maintained for the breach of a contract calling for the performance of criminal acts is, Can the plaintiff establish his case otherwise than through the medium of the illegal transaction to which he himself was a party?

**Executory contract — bank — customer — excessive loan — illegal — failure to perform — damages — not recoverable.**

5. An executory contract made between the bank and a customer, in which the bank agrees to make the customer a loan in excess of the amount which it is permitted by law to loan to one person, subjects the officers of the bank, if the loan is made, to conviction and fine, under the provisions of § 4668, Revised Codes of 1905, and the bank to a forfeiture of its franchise under § 4663, Revised Codes of 1905. *Held*, that by reason of these provisions, a loan in excess of 15 per cent of the capital and surplus of the bank to one individual would be illegal, and that, therefore, a contract to make such a loan, when violated, does not subject the bank to damages for its breach.

**Failure to make excessive loan — action for damages — illegal contract — no recovery.**

6. Applying the principles above announced to the facts in this case, it is

Note.—For authorities on the question of the liability of bank directors in case of bad loans, see notes in 55 L.R.A. 751, and 39 L.R.A.(N.S.) 173.

*held* that the plaintiff cannot recover in an action against the defendant bank for damages for failure to make a loan which it is alleged the cashier of the bank agreed to make, in excess of the limit fixed by law.

Opinion filed April 1, 1914. Rehearing denied May 20, 1914.

Appeal from judgment of the District Court of McHenry County, *Hon. A. G. Burr*, Judge.

Reversed.

*Christianson & Weber, Engerud, Holt & Frame,* and *J. F. Callahan,* for appellant.

The insufficiency of the evidence to establish the alleged agreement might be remedied on another trial, and hence, though it would be a ground for a new trial, it would not justify a judgment. *non obstante veredicto.* Meehan v. Great Northern R. Co. 13 N. D. 441, 101 N. W. 183.

In any event, the agreement alleged was unlawful, and unenforceable, because its execution involved the commission of a crime. Rev. Codes 1905, §§ 4657, 4658.

An agreement to do something which the law forbids cannot be made the basis of a cause of action. Arnot v. Pittston & E. Coal Co. 2 Hun, 596; Stover v. Flower, 120 Iowa, 514, 94 N. W. 1100; Weston v. Estey, 22 Colo. 334, 45 Pac. 367; Swindell v. Bainbridge State Bank, 3 Ga. App. 364, 60 S. E. 13; Washburn Mill Co. v. Bartlett, 3 N. D. 138, 54 N. W. 544.

The defendant bank was not bound by the agreement, because it was not within any authority of the cashier to make it. Corey v. Hunter, 10 N. D. 5, 84 N. W. 570; First Nat. Bank v. Michigan City Bank, 8 N. D. 612, 80 N. W. 766; 31 Cyc. 1643, 1644.

The same rule that governs the acts of agents of individuals governs the acts of cashiers of banks. Morse, Banks & Bkg. 2d ed. pp. 155, 195 et seq.; 5 Cyc. 457, 463, 464 et seq.; First Nat. Bank v. Michigan City Bank, 8 N. D. 612, 80 N. W. 766.

Plaintiff must make it appear that the acts of the cashier were within his authority. State v. Commercial Bank, 6 Smedes & M. 218, 45 Am. Dec. 280.

A person dealing with the cashier of a bank is bound, at his peril, to

27 N. D.—40.

see that the cashier is acting within his authority. Corey v. Hunter, 10 N. D. 12, 84 N. W. 570; Rev. Codes, §§ 5769, 5770.

There is no ratification, and there could be no estoppel to the right to question the validity of a contract to commit a crime. Swindell v. Bainbridge State Bank, 3 Ga. App. 364, 60 S. E. 13; Rev. Codes, §§ 5772, 5775; 31 Cyc. 1244, and cases cited in note, 78, 1652 et seq; State v. Commercial Bank, 6 Smedes & M. 218, 45 Am. Dec. 280; Greenawalt v. Wilson, 52 Kan. 109, 34 Pac. 403; Leggett v. New Jersey Mfg. & Bkg. Co. 1 N. J. Eq. 541, 23 Am. Dec. 728; Chadbourne v. Stockton Sav. & L. Soc. 4 Cal. Unrep. 535, 36 Pac. 127; Wheat v. Bank of Louisville, 9 Ky. L. Rep.. 738, 5 S. W. 305; United States v. City Bank, 21 How. 356, 16 L. ed. 130; Bank of Commerce v. Hart, 37 Neb. 197, 20 L.R.A. 780, 40 Am. St. Rep. 479, 55 N. W. 631; North Star Boot & Shoe Co. v. Stebbins, 2 S. D. 74, 48 N. W. 833; Lloyd v. West Branch Bank, 15 Pa. 172, 53 Am. Dec. 581, 1 Am. Neg. Cas. 574; Thompson v. McKee, 5 Dak. 172, 37 N. W. 367; Daviess County Sav. Asso. v. Sailor, 63 Mo. 24; Merchants' Bank v. Rudolf, 5 Neb. 527; Cochecho Nat. Bank v. Haskell, 51 N. H. 116, 12 Am. Rep. 67; Bank of United States v. Dunn, 6 Pet. 51, 8 L. ed. 316; Sturdevant Bros. v. Farmers' & M. Bank, 69 Neb. 220, 95 N. W. 819.

*H. B. Senn* and *A. E. Coger,* for respondent.

It is no defense, that a contract by a bank to loan in excess of the law limit is unlawful and unenforceable, where the contract has been executed. Anderson v. First Nat. Bank, 4 N. D. 182, 59 N. W. 1029; 5 N. D. 80, 64 N. W. 114; 5 N. D. 451, 67 N. W. 821; 6 N. D. 497, 72 N. W. 916, 172 U. S. 573, 43 L. ed. 558, 19 Sup. Ct. Rep. 284.

If the bank has violated the law it can only be taken advantage of by the sovereign power that created the bank. Anderson v. First Nat. Bank, 172 U. S. 573, 43 L. ed. 573, 19 Sup. Ct. Rep. 284, 5 N. D. 455, 67 N. W. 821; Prescott Nat. Bank v. Butler, 157 Mass. 548, 32 N. E. 909; First Nat. Bank v. Smith, 8 S. D. 7, 65 N. W. 437; Merchants' Nat. Bank v. Hanson, 33 Minn. 40, 53 Am. Rep. 5, 21 N. W. 850; Union Nat. Bank v. Matthews, 98 U. S. 621, 25 L. ed. 188; National Bank v. Whitney, 103 U. S. 99, 26 L. ed. 443; Logan County Nat. Bank v. Townsend, 139 U. S. 67, 35 L. ed. 107, 11 Sup. Ct. Rep. 496;

Thompson v. St. Nicholas Nat. Bank, 146 U. S. 240, 36 L. ed. 956, 13 Sup. Ct. Rep. 66; Walden Nat. Bank v. Birch, 130 N. Y. 221, 14 L.R.A. 211, 29 N. E. 127.

It is the law that the security is not void because the loan is in excess of the law limit. A party who has received the benefit of an agreement cannot question its validity. Smith v. First Nat. Bank, 45 Neb. 444, 63 N. W. 796; State ex rel. Clapp v. Minnesota Thresher Mfg. Co. 40 Minn. 213, 3 L.R.A. 510, 41 N. W. 1020; Mills County Nat. Bank v. Perry, 72 Iowa, 15, 2 Am. St. Rep. 228, 33 N. W. 341; Union Nat. Bank v. Matthews, 98 U. S. 621, 25 L. ed. 188; Union Gold-Min. Co. v. Rocky Mountain Nat. Bank, 96 U. S. 640, 24 L. ed. 648, 1 Mor. Min. Rep. 432; 5 Cyc. 523; First Nat. Bank v. Flath, 10 N. D. 285, 86 N. W. 867; Fortier v. New Orleans Nat. Bank, 112 U. S. 439, 28 L. ed. 764, 5 Sup. Ct. Rep. 234; Neilsville Bank v. Tuthill, 4 Dak. 295, 30 N. W. 154.

The plea of *ultra vires* will not avail to either party, where the contract has been fully executed by the other party. First Nat. Bank v. Bakken, 17 N. D. 224, 116 N. W. 92; Tourtelot v. Whithed, 9 N. D. 467, 84 N. W. 8; Logan County Nat. Bank v. Townsend, 139 U. S. 67, 35 L. ed. 107, 11 Sup. Ct. Rep. 496.

The plea of *ultra vires* cannot be set up to defeat a recovery upon negotiable paper bought by a bank. First Nat. Bank v. Smith, 8 S. D. 101, 65 N. W. 439; Prescott Nat. Bank v. Butler, 157 Mass. 548, 32 N. E. 909; Merchants' Nat. Bank v. Hanson, 33 Minn. 40, 53 Am. Rep. 5, 21 N. W. 849.

SPALDING, Ch. J. Can there be a recovery of damages for the violation of a contract, the execution of which would constitute the commission of a crime by the officers of the defendant? This is the question to be considered on this appeal. For an understanding of the facts, we may state that the action was brought to recover damages for the failure of the defendant, a state bank, to make a loan to the plaintiff as agreed, and therewith to pay the sheriff of McHenry County March 15, 1910, the sum necessary to effect a redemption of certain real estate from a foreclosure sale, and for which the time of redemption expired on such date, and which, it is alleged, went to sheriff's

deed by reason of defendant's breach of contract. Damages in the sum of $6,500 were demanded. The answer denies any contract whatsoever with respect to the payment of any obligations of the plaintiff, or any liens or foreclosure against the property; and as a further defense it is alleged that the defendant is a banking corporation organized under the laws of this state, and that the contract set forth in the complaint was wholly beyond the power and authority of any officer of the defendant to enter into by or on the behalf thereof, and wholly in excess of the powers of the defendant bank, and therefore void and unenforceable. One Wheelon, cashier of the bank, was made a party defendant, but in the course of the trial the action was dismissed by consent as to him. A verdict for $500 was rendered in favor of plaintiff, and judgment entered thereon. This appeal is from the judgment, and also from an order denying defendant's motion for judgment notwithstanding the verdict. In this court the only distinctive assignments of error insisted upon are the second and third, raised in the motion for a directed verdict. These points are that the agreement alleged would be unlawful and consequently void and unenforceable, because its execution necessarily involved the commission of a crime, and, second, because the bank was not bound by the agreement, as the making of such an agreement was not within the express, implied, or ostensible authority of the cashier. We do not find it necessary to consider separately the last point, as it necessarily follows, from our conclusion on the first point, that it is well taken. It appears that the plaintiff had various conversations with Wheelon, the cashier, with reference to the bank making a loan sufficient to take up the indebtedness against his property and save it from going to sheriff's deed. There were a number of mortgages against it, and over $4,000 was needed. For the purpose stated, an application and papers were executed for a loan of $4,000, which Wheelon thought he could procure. It appears that in the attempt to make this loan, Wheelon, either on his own behalf, or on behalf of the bank, was only acting as a negotiator; that it was not proposed that the bank itself make the loan. Wheelon found it impossible to secure $4,000 on the security offered. New papers were prepared for a loan of $3,000, or a trifle over, the mortgage or mortgages and notes running to the

bank. The plaintiff was to raise by other means something like $1,300, or enough, when added to the proposed loan, to make possible the redemption and the lifting of certain other mortgages on the property. As to the merits, we may say in passing that the evidence to sustain the verdict is, at the best, very slight. It discloses considerable uncertainty as to whether the minds met, as to what was to be done with reference to the additional amount to be raised by plaintiff. On his part, it tends to show that something was to be done by the bank, while, on the other hand, Wheelon claims to have understood that the plaintiff was to raise his part and then call on the bank, so they could co-operate in making redemption and in discharging the mortgages. Defendant's evidence is emphatic on this point. The papers were sent to a bank in another town for execution, for the accommodation of the plaintiff. They were executed before the cashier of that bank, and were by him placed in a basket in the bank where the employees of the bank deposited mail intended to be taken to the postoffice. No showing is made as to what became of them, but they were supposed to have been taken from the basket by somebody and mailed, and a copy of a letter written by the cashier of that bank was received in evidence, but there is no proof that the papers were in fact mailed. Wheelon testifies on behalf of the defendant that the defendant bank never received them. By reason of failing to receive the executed papers, or to hear from the plaintiff, it seems to have assumed that he had abandoned the deal, and therefore did nothing toward making a redemption, and the land went to deed. This recitation shows the circumstances surrounding the transaction. We do not understand it to be controverted that defendant, through the cashier Wheelon, agreed to make the loan. It is stipulated that the capital and surplus of the defendant was $12,000. Under the prohibitions of § 4657, Rev. Codes 1905, the most that the defendant could loan to any one person was $1,800, and by § 4668, Rev. Codes 1905, any officer of any banking association loaning to one person more than 15 per cent of its capital and surplus actually paid in is subject on conviction to a fine of not less than $50 nor more than $500. Hence, if this loan had been made, the cashier and any other officer of the bank participating in negotiating it would have been subject to prosecution for violation

of this provision, and under the provisions of § 4663, Rev. Codes 1905, a forfeiture of the bank's franchise would have been worked. The plaintiff was charged with knowledge of the limitation of the amount which the bank could loan to one person. This is well established by authority. He is chargeable with knowledge of the law and of the amount of any loan which can lawfully be made on the capital and surplus possessed by the bank. There is a distinction between cases in which knowledge or constructive notice is furnished by public records and the statute, and those cases in which some fact not disclosed in that manner may affect the transaction. If the borrower must go to the records of the bank or sources extrinsic, the law, or public records, he may not be charged with notice of the limitations of the bank's authority; as, for instance, if he were seeking to secure a loan which the bank might ordinarily make, but which, by reason of the depletion of the reserve required by statute to be maintained, it was not permitted by law to make, and made a contract for such a loan, and such a contract was violated by the bank, he probably would not be charged with notice of the condition of the reserve; but in the case at bar, the law and the public records give complete information as to the authority of the bank to make a loan of any given size. Mutual Guaranty F. Ins. Co. v. Barker, 107 Iowa, 143, 70 Am. St. Rep. 149, 77 N. W. 868; Bailey v. Methodist Episcopal Church, 71 Me. 472; Jemison v. Citizens' Sav. Bank, 122 N. Y. 135, 9 L.R.A. 708, 19 Am. St. Rep. 482, 25 N. E. 264; Bissell v. Michigan Southern & N. I. R. Cos. 22 N. Y. 258; Monument Nat. Bank v. Globe Works, 101 Mass. 57, 3 Am. Rep. 322; Chambers v. Falkner, 65 Ala. 448; Hood v. New York & N. H. R. Co. 22 Conn. 1; Franco-Texan Land Co. v. McCormick, 85 Tex. 416, 34 Am. St. Rep. 815, 23 S. W. 123; Durkee v. People, 155 Ill. 354, 46 Am. St. Rep. 340, 40 N. E. 626; Memphis Grain & Package Elevator Co. v. Memphis & C. R. Co. 85 Tenn. 703, 4 Am. St. Rep. 798, 5 S. W. 52; Swindell v. Bainbridge State Bank, 3 Ga. App. 364, 60 S. E. 13; Miller v. American Mut. Acci. Ins. Co. 92 Tenn. 167, 20 L.R.A. 765, 21 S. W. 39; Ossipee Hosiery & Woolen Mfg. Co. v. Canney, 54 N. H. 295.

In Anderson v. First Nat. Bank, 5 N. D. 451, 67 N. W. 821, this court held that "so long as the matter remains executory it [bank] can

fall back upon the defense of *ultra vires*," and that "so long as the business remains unfinished the person dealing with the bank must take the risk of the refusal by the latter to proceed. He is bound to know that the act is *ultra vires*." The respondent seeks to sustain the judgment on the ground that the state alone can object that the contemplated loan was in excess of the amount permitted to be loaned to one person, under the provisions to which we have referred. This is doubtless a correct statement, when applied to many cases, but is not in the case at bar. It has often been held that where the loan is made on a contract which has been fully executed the borrower cannot set up as a defense to an action on the contract the fact that it is *ultra vires*, or entered into in excess of the authority of the corporation, because to permit him to make such a defense in an action brought to recover on the indebtedness would result in his retaining the benefits, and this would be inequitable and unconscionable. Having dealt with the bank and received his consideration in such case, he is estopped from denying the authority of the bank to make the contract. However, many courts hold that the corporation cannot recover on the note or contract, but may maintain an action for money had and received, or other appropriate action. In the instant case, the plaintiff could undoubtedly maintain an action to cancel or recover possession of his notes and mortgages, if the bank had them and was seeking to retain or was claiming any rights under them. As a general rule, contracts to perform acts forbidden by express statute or which subject the parties to punishment, are unenforceable. 1 Page, Contr. §§ 329–333, and authorities cited. This seems to be a quite simple and elementary proposition, and undoubtedly would be so treated, except that courts, evidently in attempts to meet the exigencies of individual cases, have refined away much of the force which common sense would seem to give the law. If it is a crime to do an act, what reason can be advanced for the enforcement of a contract which requires one of the parties to do the thing which constitutes the crime? Would not the enforcement of such contracts by courts be lending the processes of law to promote and encourage disobedience to law? Would it not be employing the machinery intended to sustain and uphold the law to effect its destruction? The law will not lend its support to claims

founded upon its violation. Without entering upon an extended discussion of the subject, it may be said that the intent of the legislature in making the prohibition in question is important, and the law should be so construed as to carry out that intent. For whose protection was it intended? It is known to every person conversant with business life that a large percentage of bank failures, with resulting loss to stockholders and depositors, is caused by loaning too large a proportion of the stock or deposits to single individuals. Experience and observation had shown in a general way about what proportion might be loaned in the aggregate and leave the bank, under ordinary conditions, and circumstances, able to pay depositors as they make demand. They also serve as a guide in fixing the size of individual loans. While no exact margin of safety could be established, the legislature, from a survey of the field of banking and conditions in the state, exercised its judgment and concluded that 15 per cent of the capital stock and surplus was the most that the bank ought to be permitted to loan to anyone. This limitation is for the protection and to promote the safety of the stockholders, depositors and other customers, but especially of depositors and customers. Pratt v. Short, 79 N. Y. 437, 35 Am. Rep. 531. Recognition of this is probably one of the most potent reasons given by courts for holding that a bank may recover on an executed contract made in violation of the prohibition. They reason that the legislative intent was to protect the depositors, and that to deny recovery when the other party has the bank's money would not only promote injustice, but would defeat the object sought to be accomplished. On the other hand, where to permit a recovery would defeat the end sought to be attained, the contract will not be enforced, and if not enforceable, damages for its breach cannot be recovered. 29 Am. & Eng. Enc. Law, 62; Pratt v. Short, 79 N. Y. 437, 446, 35 Am. Rep. 531. In the case at bar the bank positively denies the receipt of anything of value from the plaintiff. If the mortgages and notes ever reached it, the former were never recorded, and the defendant has at no time made any claim thereunder. Appellant claims that the papers were not delivered, and that, therefore, the contract was purely executory. Respondent argues that they were delivered, and that nothing remained to be done but for the appellant

to make redemption, and that, therefore, the contract was fully executed on his part. It is, however, clearly shown by the record that appellant not only did not receive the papers, but that redemption and clearing the title of mortgages required still other acts on the part of respondent, and that the contract was not an executed one, notwithstanding the fact that the jury must have found that the bank received the papers, and this in the face of no evidence of mailing and of no positive evidence that they were received. At most the contract was only partially executed. One of the tests applied in cases of this nature is, Can the plaintiff establish his case otherwise than through the medium of an illegal transaction to which he himself was a party? Elliott, Contr. § 646, and cases cited; Ray, Contractual Limitations, 146; Holt v. Green, 73 Pa. 198, 13 Am. Rep. 737. If this is the proper test, it is obvious that plaintiff must show the agreement to loan, and the amount of the loan contemplated. In doing so he discloses the illegality of the act on which his contract rests, and on which he relies for recovery. The burden of proof is at all times on the plaintiff. It would serve no usefull purpose to review *in extenso* the numerous and conflicting authorities bearing on the subject of *ultra vires* and illegal contracts. We find only one authority directly in point, and that, so far as the opinion discloses or we have been able to ascertain from an examination of the statutes of the state in which it is found, rests upon a statute which provides no penalty for a violation of the prohibition, other than the forfeiture of the franchise.

In Swindell v. Bainbridge State Bank, 3 Ga. App. 364, 60 S. E. 13, the facts were that the bank brought suits against Swindell & Company as principal and other defendants as indorsers on certain promissory notes. The principal defendants pleaded that the cashier of the bank made an agreement that it would from time to time loan them, up to the limit of $20,000, in such amounts as they might desire, the loans to be evidenced by notes; that the defendants agreed to give the bank all their domestic business, which amounted to a very large sum; that the bank in pursuance of this agreement loaned the defendants between $16,000 and $18,000, and refused to lend the balance of the $20,000 contracted for. The Swindell firm sought to recover dam-

ages for breach of the contract, and the answer set forth the elements claimed to constitute the damages, which were claimed by way of recoupment against the notes. The Georgia statute prohibited that bank loaning money, unless it was amply secured by good collateral, and the answer did not set up that the bank had sufficient capital and surplus to authorize, under the statute, loans on other security, and it was held that the court would take judicial notice of the fact that the capital of the bank was less than the sum necessary to entitle it to loan on other security than collateral. It held that the alleged contract to lend $20,000 was a positive violation of the express terms of the statute, and that, therefore, this fact constituted a valid defense to Swindell's claim for damages. It was further held that the cashier had no authority to make an agreement to lend $20,000 of the bank's money, and the court pertinently remarks: "If he had such authority, what limitation was there upon his right to lend all of the bank's assets to one individual? The direction of the bank is in its board of directors, and even if the directors could delegate to a merely ministerial officer, such as a cashier, their legislative and judicial functions, they could not do so unless expressly so authorized, either by the general law or by the charter or by-laws of the bank. . . . Even if such authority was conferred by the charter of the bank upon the directors, it would be void in this case, because in positive violation of the terms of the general laws contained in the Civil Code [1895] § 1916. . . . Of course if the bank had no authority, through its directors, to make such a contract, the cashier could not have such authority. It therefore clearly follows that the bank could not have been held liable in damages for any breach of an agreement which the cashier had made with the defendants without authority from the bank and in direct violation of the banking laws of the state. This would be to give the cashier greater authority than the law gives to its creature, the bank itself." It then held that notice of the power and legal capacity of a corporation, or of the bank, was indisputably imputed to all persons contracting with it, and that Swindell & Company were put on notice that the agreement made by the cashier to loan them $20,000 was illegal; that the law was for the benefit of the public, as well as for the stockholders, and that the power to ratify an

agreement which the bank had no authority to make could not exist, and that neither the stockholders nor the directors, by acquiescence or express agreement, could ratify any contract made by any officer or by the bank itself, which the law expressly forbade. It then discusses the subject of estoppel on the part of the bank, and the court says that it is aware of no case which goes to the extent of holding that there can be an estoppel where the contract could not lawfully be made by the corporation.

We may observe in this connection that the same court holds that had the loan been consummated in violation of the law, a recovery of the money could be had by the bank. In this Georgia case the defendants had executed the contract to the extent of giving the bank its business, and loans had been made to it to the amount named. We are satisfied that the legislature of this state has announced, in the provision referred to and governing state banks, what it considers a rule of sound public policy, and one necessary to the protection of all persons dealing with a state bank, and that without disregarding the plain intent of that body this judgment cannot be sustained. It is therefore reversed, and the District Court is directed to enter judgment for the defendant.

## Petition for Rehearing Filed May 20, 1914.

. PER CURIAM. Respondent has submitted a petition for rehearing, which each member of this court has carefully considered. As is usual in petitions for rehearing, attention is called to several incidental points in the evidence which it is asserted the court has overlooked. The bar should bear in mind that this court can seldom in an opinion recite or refer to every fact in the case. To do so would lengthen many opinions to such an extent that they would never be read, would so involve the statement of facts that each reader would have as much difficulty in deciphering them as this court often has. The most we can do is to refer to controlling facts, and sometimes, in addition, such facts as furnish sidelights. It is true that counsel and the court do not always agree as to what facts are controlling, but we attempt to

state sufficient facts or claims to enable the reader to follow intelligently the issues presented.

Respondent says that the opinion appears to be based largely upon the conclusion that the verdict was not sustained by the evidence; that, if there is to be a review of the facts for the purpose of ascertaining whether they sustain the verdict, the abstract should be completed by adding to it material evidence omitted; and that plaintiff has the right to be heard on this question. Respondent had the opportunity to amend the abstract to cover such evidence, if the statement of the case includes it. We did not make reference to the evidence on the general proposition that the verdict was not sustained by the evidence as to a contract. We did, however, refer to the evidence relating to the mailing of the mortgages to appellant as not showing that they were mailed and received, but as in fact showing the contrary.

Great reliance is placed upon the case of Anderson v. First Nat. Bank, 5 N. D. 451, 67 N. W. 821, and referred to in the opinion, as being in conflict with the decision in the case at bar. There is a marked distinction between the principles involved in the Anderson Case and those in the case at bar. The question of agency was the subject of the controversy in the Anderson Case. In the case at bar, the question of agency is involved, but only incidentally, the controlling question being that of making a loan. This loan had to be made by the bank to enable it to execute the agency contract, if there was one, and the loan was in excess of the amount which the law permits such a bank to make. True, there were other payments to be made with the proceeds of the loan contemplated, beside those necessary to effect the redemption from the sale which had been made, but the amount necessary to effect the redemption was $2,317.94, and without affording the respondent even the temporary use of this money, no provision was made or contemplated for effecting the redemption. In the original briefs, arguments were based almost entirely upon the questions of a loan; but respondent, at least in a measure, shifts his position in his petition for rehearing, and argues that the subject of the action was the making of the redemption as the agent of respondent. It must be clear that this could be of no avail unless means were provided with which to make it. Had the plaintiff furnished the bank with

the means with which to effect the redemption, and had the bank agreed to make it, but failed to do so, the case would be in principle parallel with the Anderson Case. But in the Anderson Case the portion of the opinion which respondent relies upon was purely *obiter,* as the court first decided that the acting of the bank as the agent of Anderson was a legitimate employment; but, even in a subsequent portion of the opinion upon which respondent relies, it is said that "so long as the business remains unfinished, the person dealing with the bank must take the risk of the refusal by the latter to proceed;" and it is further said, "he is bound to know that the act is *ultra vires."* And it is also said in the same case on its first appearance in this court (4 N. D. 182, 59 N. W. 1029), that "if plaintiff (the principal) in giving his instructions to the defendant (the agent) couched his instructions in ambiguous language, the plaintiff cannot hold the defendant responsible for the consequence, if defendant, in the exercise of reasonable prudence, while acting in good faith, put an interpretation upon the instructions not intended by the plaintiff. In such cases the principal and not the agent, must suffer the loss." In the case at bar there is at least grave doubt whether the minds of the parties to the transaction involved ever met on what was to be done by the bank. The testimony of the plaintiff is both conflicting and ambiguous.

Reference is made in the petition to the Swindell Case, which, it is said, differs from the case at bar in that the contract in that case was wholly executory. Even if that differentiated the cases, it is not the fact. One of the controlling considerations in that case for the agreement of the bank to make advances to the plaintiff was that it should have the plaintiff's business, which was of great value, and the plaintiff gave it its business. This was at least a partial execution of the contract on the part of Swindell. The petition for rehearing is denied.