[No. 21367. Department Two. January 31, 1929.]

CANADIAN BANK OF COMMERCE, *Appellant*, v. H. B. JOHNSON, *as Supervisor of Banking, Respondent.*[1]

*Bronson, Jones & Bronson,* for appellant.

*The Attorney General* and *B. B. Adams, Assistant,* for respondent.

MAIN, J.—By this action the plaintiff sought an injunction against the state supervisor of banking. To the complaint a demurrer was interposed and sus-

[1]Reported in 274 Pac. 99.

tained. The plaintiff declined to plead further, and elected to stand upon its complaint. Judgment was entered dismissing the action, from which the plaintiff appeals.

The facts, as they appear in the complaint, which are necessary to present the question here for determination, may be summarized as follows: The appellant, the Canadian Bank of Commerce, is a banking corporation, organized under the laws of the Dominion of Canada, with its principal place of business in the city of Toronto. It maintains a large number of branch offices or branch banks in Canada, in foreign countries and in the United States, one of which is located in Seattle.

The Seattle office or branch bank has been maintained since the year 1900, and during all of the time has been actively engaged in carrying on a general banking business. This branch has deposits of approximately the sum of $5,500,000. The business is conducted in the name of the appellant and for its benefit through the Seattle branch as an agent. The appellant has never been, and is not now, incorporated under the laws of this state. It has paid its last annual license fee and is authorized to do business here as a foreign corporation. The appellant has an unimpaired and fully paid capital stock in the sum of twenty million dollars and, in addition to this, an undivided surplus in the sum of twenty million dollars. It also has unimpaired reserve or rest accounts, the net worth of which is in excess of forty million dollars. Its total assets are in excess of five hundred million dollars. The Seattle branch has no capital stock and no surplus, but the appellant keeps therein at all times not less than $200,000 as a working capital, upon which it pays taxes.

It has been the custom of the appellant to make loans to certain customers in excess of twenty per cent of $200,000. About these loans, there is no question as to their safety. It has made one loan to a very wealthy corporation in the sum of $180,000. The respondent, the supervisor of banking, has directed the appellant to reduce its loans so that none of them will exceed twenty per cent of $200,000, the amount of capital kept by the appellant in the Seattle branch and upon which it pays taxes.

■ The question is whether the appellant is limited, in making loans, to twenty per cent of the $200,-000, or whether it has a right to loan up to twenty per cent of its capital stock and surplus. If the appellant is limited to the $200,000 as the basis for figuring the amount of loans which it can make, the judgment of the trial court should be affirmed. On the other hand, if its capital stock and unimpaired surplus is the basis, then the judgment cannot be sustained. To determine the question here presented, requires an examination of certain statutory provisions.

In 1905 (Laws of 1905, p. 55, ch. 31) the legislature passed an act, § 2 of which provided:

"Every foreign bank or foreign banker heretofore having established, or hereafter establishing an office in this state, shall have, and at all times maintain, at every such office, a capital not less in amount than that required by the national bank act for the organization of a national bank at the time when, and place where, such office was or shall be opened, and the payment of taxes on such amount shall be *prima facie* evidence of the payment and existence of such capital; and no such foreign bank or foreign banker shall set forth on the stationery of such bank or banker or in any manner advertise a greater capital, surplus and undivided profits than are actually maintained at any such bank within this state."

In 1917 the legislature passed an act (Laws of 1917, p. 271) entitled ''Banks and Trust Companies,'' which sometimes has been referred to as the banking code. In § 14 of that act (Rem. Comp. Stat., § 3221) the terms ''bank'' and ''branch bank'' are defined. It is there said:

''The term 'bank,' where used in this act, unless a different meaning appears from the context, means any corporation organized under the laws of this state engaged in banking, other than a trust company, or a mutual savings bank.

''The term 'branch bank,' where used in this act, means any office of deposit or discount maintained by any bank or trust company, domestic or otherwise, other than its principal place of business, regardless of whether it be in the same city or locality.''

''The section of the Laws of 1905, p. 55, above quoted, is carried forward and substantially embodied in the 1917 act in § 41, p. 293 (Rem. Comp. Stat., § 3248), where it is provided:

''A branch of any foreign bank or banker actually and publicly engaged in banking in this state in full compliance with the laws hereof, which were in force immediately prior to the time when this law becomes operative and which branch has a capital not less in amount than that required for the organization of a state bank as provided in this act at the time and place when and where such branch was established, may continue its said business, subject to all of the regulations and supervision provided for banks. The amount upon which it pays taxes shall be *prima facie* evidence of the amount and existence of such capital. No such bank or banker shall set forth on its or his stationery or in any manner advertise in this state a greater capital, surplus and undivided profits than are actually maintained at such branch.''

This act refers to a state bank, while the act of 1905 referred to a national bank, but this does not affect the question to be determined.

Section 51 of the Laws of 1917, p. 297 (Rem. Comp. Stat., § 3258), provides:

"The total liability to any bank or trust company of any person for money borrowed, including in the liabilities of a firm or association the liabilities of the several members thereof shall not at any time exceed twenty per cent of the capital stock and surplus of such bank or trust company, actually paid in and unimpaired; . . ."

In this section a limitation is placed upon the right of any bank or trust company to loan to any one person a greater sum than twenty per cent of the capital stock and surplus of such bank or trust company.

The appellant is not here asking that it be permitted to do business on more favored terms than domestic banking corporations. Under the definition of a bank, as above set out, if literally applied to § 51, the appellant would not be a bank or trust company within the contemplation of the statute. If this construction were given, then the appellant would be permitted to do business upon more favorable terms than are domestic banking corporations, and a serious constitutional question would be presented. It was undoubtedly the thought of the legislature, when it drafted § 51 and used the term "any bank or trust company," that it intended thereby, not only to include domestic banking corporations, but foreign banking corporations authorized to do business in this state.

At the time the act of 1905 was passed, there can be no question that its provisions, with reference to the keeping of a capital of not less than that required of a national bank at the time and place where the branch was located, had no application to the limitation of the amount of loans which a branch of a foreign bank could make. Whether that provision has a different meaning after it has been carried forward into the

act of 1917, depends upon whether the latter act evidences such legislative intent. The purpose of limiting the amount of loan that can be made to any one individual is for the protection of, and to promote the safety of, the stockholders, depositors and other customers of the bank, but especially the depositors and customers. In *Wald v. Wheelon*, 27 N. D. 624, 147 N. W. 402, it is said:

"Without entering upon an extended discussion of the subject, it may be said that the intent of the legislature in making the prohibition in question is important, and the law should be so construed as to carry out that intent. For whose protection was it intended? It is known to every person conversant with business life that a large percentage of bank failures, with resulting loss to stockholders and depositors, is caused by loaning too large a proportion of the stock or deposits to single individuals. Experience and observation had shown in a general way about what proportion might be loaned in the aggregate and leave the bank, under ordinary conditions and circumstances able to pay depositors as they make demand. They also serve as a guide in fixing the size of individual loans. While no exact margin of safety could be established, the legislature, from a survey of the field of banking and conditions in the state, exercised its judgment, and concluded that 15 per cent. of the capital stock and surplus was the most that the bank ought to be permitted to loan to any one. This limitation is for the protection and to promote the safety of the stockholders, depositors, and other customers, but especially of depositors and customers."

Section 51, as already stated, limits the total liability to any bank or trust company of any person, for money borrowed, to twenty per cent of the capital stock and surplus of such bank or trust company. The capital, fully paid and unimpaired, of the appellant is twenty million dollars. Its surplus is likewise twenty million dollars. These sums, as well as all of its

assets, under the laws of the Dominion of Canada, are available to take care of any liabilities, either to depositors or others, created by any of the branch banks of the appellant. A depositor, therefore, or other creditor of the appellant, through its Seattle branch, is not limited to the $200,000 which is kept in the branch, but has a right to pursue all of the assets of the appellant in satisfaction of his demands.

There is nothing in § 41 of the Laws of 1917, p. 293, which covers the matter of a branch bank, which can be construed as evidencing an intent on the part of the legislature that a foreign bank, authorized to establish a branch bank in this state, is limited in making its loans to twenty per cent of the amount of capital which is kept in the branch bank. It is only there provided that the branch shall have a capital of not less than the amount required for the organization of a state bank at the time and place where the branch is located, and that the amount upon which taxes are paid shall be *prima facie* evidence of the amount and existence of such capital. It is true that the act contains a provision that no such bank or banker shall set forth on its or his stationery, or in any manner advertise in this state, a greater capital, surplus and undivided profits than are actually maintained at the branch. This has no significance one way or the other upon the major question here presented for determination. The legislature had the power to make such a limitation upon the right of a foreign bank to do business in this state. In *State ex rel. Leach v. Fishback*, 79 Wash. 290, 140 Pac. 387, it is said:

"It is within the power of the state to make such reasonable limitations upon the right of foreign companies to do business in this state as it deems proper."

In the briefs authorities are cited defining what is meant by "capital," "capital stock" and "surplus," but the definition of these respective terms does not require special attention. The facts show the amount of the unimpaired capital stock and surplus of the appellant. The statute limits the loan to twenty per cent of this unimpaired capital stock and surplus. As already pointed out, the branch bank has neither capital stock nor surplus, and it is difficult to see how § 51 could be made to apply to such a branch. To do so would mean the writing into the banking act something that the legislature did not place there.

It is said, however, that if this construction be placed upon the statute, then a foreign bank is permitted to do business in this state upon more favorable terms than a domestic banking corporation, in violation of § 7 of art. XII of the state constitution and Rem. Comp. Stat., § 3852; but with this contention we cannot agree. The appellant is enabled to make the larger loan, not by reason of any different opportunity, under the law, than a domestic corporation, but by reason of the fact of the greater amount of its paid in and unimpaired capital stock and surplus. The equality demanded by law is equality of opportunity, and not of ability. The same difference which exists between the appellant and any domestic corporation with a lesser amount of unimpaired capital stock and surplus is the identical one which exists between any two state banks having a different amount of capital stock actually paid in and surplus.

The judgment will be reversed, and the cause remanded with directions to the superior court to overrule the demurrer to the complaint.

FRENCH and PARKER, JJ., concur.

FULLERTON, J., dissents.