OAKES NATIONAL BANK, a Corporation, Respondent, v. FARMERS STATE BANK, a Corporation, Appellant.

(201 N. W. 696.)

**Banks and banking — contracts — evidence held not to support finding that contractual relation was one innocently entered into for borrowing and lending; arrangement held to have purpose of enabling bank to violate law prohibiting making excess loans to one person.**

1. Evidence examined and held not to support the finding of the trial court that the contractual relation, out of which this action arose was one innocently entered into by the parties for the purpose of borrowing and lending in ordinary business transaction, but that on the contrary it was an arrangement entered into for the purpose of enabling the defendant bank to violate the provisions of § 5172, Comp. Laws, 1913 prohibiting any state banking association

52 N. D.—4.

from making excess loans, that is, loans to any one individual in excess of 15 per cent of its capital and surplus, and to conceal such violations from the state banking authorities.

**Contracts — contract between two banking associations to enable one to make loans in excess of legal limit and to conceal such fact is illegal and contrary to public policy.**

2. A contract entered into between two banking associations for the purpose of enabling one of them to make excess loans in violation of § 5172 and to conceal the fact of such violations from the state banking authorities, is illegal and contrary to public policy.

**Contracts — law will not give relief to either party to contract intended to aid in violation of banking law.**

3. Where suit is brought by one of the parties to such contract against the other on account of moneys paid under the terms thereof, both are equally guilty and the law will give neither relief but will leave the parties where it finds them.

Opinion filed December 20, 1924.

Appeal and Error, 4 C. J. § 2722 p. 775 n. 26; § 2857 p. 887 n. 62. Banks and Banking, 7 C. J. § 569 p. 757 n. 53. Contracts, 13 C. J. § 366 p. 429 n. 53; § 440 p. 493 n. 18; § 983 p. 779 n. 28.

Appeal from the District Court of Dickey County, *Wolfe,* J.
Reversed.

*F. J. Graham,* and *Divet, Holt, Frame & Thorp,* for appellant.

Written contracts supersede oral negotiations and prior parol agreements so far as the subject matter of the contract is covered and included within such written contract. First State Bank v. Kelly, 30 N. D. 94.

The contract between the endorser and the endorsee of a negotiable instrument is a written one and cannot be varied or changed by parol evidence of a verbal promise or agreement made at the time of the endorsement. Citizens Bank v. Jones (Cal.) 53 Pac. 354.

A contract not in writing, to pay interest in excess of the legal rate, may be enforced for the legal rate only. First Nat. Bank v. Messner, 35 N. D. 78.

A contract, the object of which is to deceive a public officer in performance of his duties, is contrary to public policy, and void. 13 C. J. 443, § 380.

An agreement between two banks that notes should be transferred by the one to the other for the purpose of making it falsely appear to the bank examiner that the bank so transferring the notes has not violated the law by making excessive loans, is illegal and unenforceable. Exchange Bank v. Clay Center St. Bank (Neb.) 159 N. W. 409.

Every contract in violation of law is void, and the courts will not lend their aid to the enforcement of, nor permit a recovery under contracts made in violation of law prohibiting them or declaring them unlawful. Baker v. Latses (Utah) 206 Pac. 553.

A contract which is contrary to public policy cannot be validated by acts of the parties in recognition of its validity. Neither is estopped from questioning it because the other has parted with property or rendered service in reliance upon it. Seitz v. Michel (Minn.) 181 N. W. 102.

As a general rule, contracts to perform acts forbidden by express statute, or which subject the parties to punishment, are unenforceable. Wald v. Farmers St. Bank, 27 N. D. 624.

It is well settled that all contracts which have a tendency to corrupt persons holding any office or trust under a statute which imposes on them the performance of any act for the protection of the public, are void as against public policy. The law will not permit one to encourage, aid, or assist another to be unfaithful in the discharge of a legal duty he owes to the public, and any contract or agreement having that for its purpose, or having that tendency, is void. C. M. & St. P. R. Co. v. Wabash, St. L. & P. Ry. Co. 61 Fed. 993, and cases cited.

*Lauder & Lauder,* and *E. E. Cassels,* for respondent.

A loan made by a national bank upon real estate security, although prohibited by U. S. statute, is voidable, and not void, and the sovereign alone can be heard to object. Westhope v. Messner, 25 N. D. 263.

Where it is simply a question of authority to contract, arising either on the question of regularity of organization or of power conferred by the charter, a party who has had the benefit of the agreement cannot be permitted in an action founded upon it, to question its validity. Union Nat. Bank v. Mathews, 98 U. S. 188.

A court will not lend its aid to either party to a contract, whereby defendant loaned plaintiff bank his credit, represented by his note, together with certain securities, to enable it to pass examination by

the examiner without criticism of an illegal overdraft to defendant's brother, but will neither enforce defendant's note against him in suit by the bank, nor enforce, in defendant's favor, the bank's agreement to return his note and securities.    Orland v. Harlan (Cal.) 206 Pac. 75.

NUESSLE, J.    Plaintiff was a national bank, having its place of business at Oakes, North Dakota; defendant was a state bank located at Forbes, North Dakota.    The plaintiff was a depositary of the defendant.    Beginning August 30, 1918 and thereafter during several years, the defendant transmitted to the plaintiff and the plaintiff received and retained, numerous notes made by the patrons of the defendant to the defendant.    When received by the plaintiff the defendant's account was credited to the extent of the face of the notes.    The notes drew interest at the rate of 10 per cent.    When they became due they were returned by the plaintiff to the defendant and the defendant's account was charged with such notes.    The defendant made collection or renewal, as the case might be, and if renewal, the renewed note was returned to the plaintiff and credit again given the defendant's account. The plaintiff first received 8 per cent and later 9 per cent of the interest earned on such notes, the defendant retaining the excess.    All notes were made to the defendant and indorsed without recourse.    This course of business was followed through several years and many notes were thus handled.    Finally the makers of four of such notes failed to pay or renew and the plaintiff demanded payment on account of the notes from the defendant, which was refused, and this action was begun.

The plaintiff in its complaint alleged that the plaintiff and the defendant on July 16, 1918 entered into a verbal agreement whereby the plaintiff agreed to discount the defendant's notes from time to time and in consideration therefor the defendant agreed to take up said notes on or before the maturity thereof and pay the amount represented by them to the plaintiff, together with interest at the rate of 8 per cent per annum; that subsequently such agreement was modified by providing that interest should be paid at the rate of 9 per cent; that pursuant to such agreement the defendant transmitted at different times numerous notes which were thus discounted by the plaintiff; that all of such notes so rediscounted by the plaintiff were duly taken up by the de-

fendant and paid for in accordance with the terms of the agreement, excepting four, aggregating in amount $5540.35; that no part of such notes has been paid excepting the sum of $200; that subsequent to the making of such agreement the board of directors of the defendant, by resolution, duly ratified and approved the same; that at the time of the maturity of the said four notes the plaintiff tendered them to the defendant and demanded payment in accordance with the agreement but that the defendant failed and refused to pay the same or any part thereof. This complaint the defendant answered, denying specifically all of the matters and things set out therein, excepting the allegations as to the incorporation of the plaintiff and the defendant and their business and places of business. The defendant further pleaded four separate defenses. After a meticulous examination of the whole record, we are of the opinion that the third defense pleaded is the only one that requires consideration and that there is no basis in the evidence for any of the others. The third defense pleaded by the defendant was that such agreement so claimed by the plaintiff to have been made was an agreement entered into for the exchange of excess loans, that is, loans made to individuals in excess of the amounts permitted by the laws of the United States and of the State of North Dakota; and that under the terms of the agreement such notes were indorsed without recourse and marked paid upon the books of the bank transmitting them and that such agreement was made for the purpose of deceiving and concealing from their respective bank examiners the fact that such banks were making excess loans in violation of law; that by reason thereof the said agreement was void, illegal and against public policy.

The cause was tried to the court, a jury being waived. The court found that on or about the 16th day of July, 1918 plaintiff and defendant entered into an agreement whereby plaintiff agreed to make certain loans to the defendant and take as collateral security to such loans certain promissory notes to be agreed upon between the parties, and the defendant agreed to repay said loans with interest at the rate of 9 per cent per annum from the date of the loans until the same were paid, and further agreed to pay said loans at the times and on the dates when the notes so received as collateral security should mature; that as a part thereof the defendant agreed that in the event said collateral notes were not paid by the makers when due, the defendant would at once

pay said loans with interest thereon as above stated; that pursuant to this agreement the plaintiff loaned to the defendant various sums and took as collateral for said loans notes of like amount executed by four different makers payable to the defendant bank; that such notes became due prior to the commencement of this action and were never paid and the various loans secured thereby have never been paid and that the defendant is owing the aggregate of the various loans with interest. The court further found that after the agreement had been entered into and had been partly carried out, the defendant, for the purpose of deceiving the public examiner as to its condition, indorsed the said collateral notes without recourse, but that the collateral notes were delivered to the plaintiff bank merely as collateral security to secure the performance of the agreement of the defendant to repay the said loans when the said collateral notes matured; that when said notes were received as collateral security the plaintiff bank knew the purpose of the defendant bank in indorsing the notes without recourse, but that the loans were made by the plaintiff to the defendant in reliance upon the responsibility of the defendant rather than upon the collateral and that when made the said agreement contained no condition that anything should be done under it for the purpose or with the intention of deceiving the public examiner or any other public official; that there was in fact no sale of the collateral notes by the plaintiff to the defendant and that the plaintiff never became the owner of such notes; that the agreement contemplated loans by the plaintiff to the defendant which were to be repaid at stated times, and that the action was brought to recover upon such loans and not upon notes given as collateral or alleged to have been sold by defendant to plaintiff; that after such loans had been made, the defendant by and through its board of directors and stockholders ratified and approved all of such loans and agreed to pay the same at the time they became due. Upon such findings the court held that the plaintiff was entitled to judgment for the sum of $8127.-30, together with its costs and disbursements, and ordered judgment accordingly. From the judgment entered on this order, the defendant now brings this appeal to this court.

The defendant in support of the appeal (1) urges error on account of numerous rulings of the court in admitting or rejecting evidence and (2) challenges the sufficiency of the evidence to support the find-

ings as made. In the view that we take of the matter, it will not be necessary for us to pass upon the assignments predicated on the rulings on evidence. We will therefore, first turn our attention to the question of the sufficiency of the evidence to support the findings. Under well established rules, the case being an action at law tried to the court, the findings of the trial court now come before us with every presumption in their favor. These findings will not be disturbed, unless contrary to the clear preponderance of the evidence. See Lloyd Mortg. Co. v. Davis, 51 N. D. 336, 36 A.L.R. 465, 199 N. W. 869.

Now, so regarded, does the record fail to sustain the findings of the trial court? Let us see. There can be no question as to the matters of fact set out in the first paragraph of this opinion. The record further discloses that in 1918 and for some time thereafter, G. L. Strobeck was a director and the vice president (inactive) of the plaintiff. He was also a director and the president of the defendant. However, at the time this action was begun he was neither a stockholder nor an officer of the defendant. Strobeck testified that he attended a meeting of the plaintiff's directors in July, 1918 and that at that time the Forbes bank was in need of funds; that he proposed to the Oakes bank that it carry some of the defendant's paper at 8 per cent; that the defendant would guarantee this paper and if it were not paid when due would take it up; that the proposal was agreed to by the Oakes bank. No record was kept of this meeting, but another director who was present testified to the same effect. Strobeck further testified that he advised the cashier and directors of the Forbes bank of this arrangement and that the transactions thereafter had were in pursuance thereof. But it seems to us that the records of the transactions themselves, made as the same were had, establish a wholly different understanding with a wholly different underlying purpose. In any event, the first notes were sent by the defendant to the plaintiff on August 30, 1918, and accompanying them was a letter which recited in part:

"We are inclosing two notes . . . this is an excess loan with us and we wish you would carry this for us . . . I had a talk with Mr. Strobeck and he said this arrangement could be entered into with your bank. . . . We are indorsing them without recourse but will give you a blank guarantee covering any notes that we may send you.

"Also take up the matter of rates with Mr. Strobeck. I think we ought to have this carried for us at 7 per cent."

On September 2nd, the plaintiff in response thereto wrote:

"We have yours of the 30th inclosing two notes. . . .

"What notes we have taken so far from other banks have paid us 8 per cent, but we will take the matter up with Strobeck when he comes over.

"We would also like to have you fill out the inclosed slips attached to the notes so we can give some information about them when we are examined."

And, again, on October 1st defendant wrote:

"We are inclosing a note of Ole Smith in the sum of $1500.00 for which kindly give us credit as this is an excess loan with us."

And on November 22nd:

"Enclosed find . . . notes for which give us credit. You don't want to get scared about us sending over so many notes. There won't be so very many more. . . ."

And, on January 6, 1919:

"We are inclosing $4,050 worth of notes for credit. This cleans up our fall's business and we won't have but very few excess loans from now until next fall.

"We of course agree to take these notes up with interest at maturity and you can keep this letter for your files. Mr. Strobeck wrote me sometime ago about sending you a letter agreeing to take care of the notes."

And, on August 24, 1920:

"We have yours of 18th inst. relative to the notes you are carrying for us requesting us to take care of same when due.

"Will be a few weeks before funds flow in very heavily but think will be able to take up the paper if you find yourselves unable to renew in full or in part. The paper you have is that of excessive borrowers we have and of course will have to discount same with other banks if you can not continue carrying it."

On September 15, 1920, plaintiff wrote defendant:

"I have your letter of September 11th relative to the paper we are carrying for you. We are not going to ask you to take this paper all up but will appreciate some of it taken care of by October 1st. . . .

". . . if you can arrange conveniently to take care of part of this paper we will appreciate it.

"I wish to assure you that we will from time to time handle as much of your excess business as we see fit."

Nor was this transaction by any means one-sided. We find that on May 31, 1919 the plaintiff wrote the defendant:

"We have to-day given you credit for your two notes which you sent us. We may be able in a few days to send you a note of $2,000 which you may carry for us."

And, on June 24th, plaintiff wrote:

"Your letter of recent date at hand stating you wish to carry a little more paper.

"I inclose a good note of $2,000 due on or before October 1st. . . . This you may carry for awhile. You can return it to us when due and we will give you credit."

And on July 5th:

"Please find inclosed a note of $1500 which we are to-day charging to your account. . . . It is an excess loan with us.

"We have indorsed this note without recourse and you may return same to us when due."

And on July 19th:

"You are carrying a note of $1,000 for us . . . I kindly ask that you return this to us and we will credit your account with same."

And on October 2nd:

"You hold some notes that we sent to you and asked to carry for us that were due this October 1st, kindly send them to us and we will credit same to your account."

And, again, on November 11th:

"I inclose our note of $700.00 and ask that you carry it for us for awhile, as you stated in a letter some time ago that you would carry some paper. I am to-day charging this to your account and if you should not be able to handle it, let us know."

And, on March 3, 1920, plaintiff wrote:

"You are carrying for us a note of $700.00. . . . If you will send us this note, we will credit your account with same."

(This last was the note sent on November 11, 1919.)

We have quoted the above from a portion of the correspondence that

passed between the two banks. We think it plainly appears therefrom that there was a complete and full understanding on the part of each as to what the other was doing and the reason why that was done which was done. All of the notes sent by the Forbes bank, some forty or more, were excess notes. Some of those sent by the Oakes bank were not. It further appears from the record that when these notes were originally sent by the Forbes bank to the Oakes bank they were indorsed without recourse and noted on the books of the Forbes bank as paid, and when, later, renewals were taken such renewals were not in any manner placed upon the books of the Forbes bank. Neither was there any record kept whereby it appeared that the notes were either assets or liabilities of the Forbes bank, and, on the other hand, it. appears that payments by the makers of the notes were made to the Forbes bank and when the notes were renewed the renewals were taken by the Forbes bank and payable to it. It also appears that when the notes were received by the Oakes bank they were carried on its books without anything to indicate that there was any obligation on account of them on the part of the Forbes bank. When the State Examiner asked the Oakes bank for a "reconcilement" the Oakes bank reported to him that the Forbes bank was not obligated to it on account of any paper held, and no disclosure was made as to the real facts.

When the Oakes bank transmitted its notes to the Forbes bank it noted them as paid on its ledger, and after such notes were sent to the Forbes bank they appeared on the Oakes bank's books by memoranda only and were not carried as a part of the assets of that bank.

By reason of these evidences we think it appears established beyond question that the arrangement between these banks was originated and carried out not for the primary purpose of borrowing and lending (though that was incidental), but rather for the purpose of enabling the Forbes bank to make and carry excess loans and keep the fact that it was so doing from the knowledge of the banking officials of the state, and that further, from the very inception of the course of dealing, the Oakes bank had full knowledge and understanding that this was so and, so knowing, entered into and lent its aid in carrying out the project. The evidence, therefore, will not sustain the findings of the trial court as to the character of the transaction and its purpose.

The question then arises as to whether, the facts being as we have in-

dicated, the plaintiff is entitled to recover on account of the monies thus by it advanced to the defendant in the course of the dealings be-, tween them.   Section 5172, Comp. Laws, 1913 prohibits the making of excess loans, that is, loans to any one individual in excess of 15 per ·cent of the capital stock and surplus of a state banking association. Section 5173, Comp. Laws 1913 makes the violation of § 5172 a misdemeanor.   Section 5174, Comp. Laws 1913, as amended (Session Laws 1915 chap. 57), makes it a felony for any officer, agent, or clerk of any state banking association to "willfully and knowingly subscribe or make any false statement or entry in the books of such association, or knowingly subscribe or exhibit any false paper with intent to deceive any person authorized to examine as to the condition of such association or willfully subscribe or make false reports."

The defendant bank deliberately and flagrantly violated the laws of the state forbidding it to make excess loans.   It did not hesitate to take such steps as it deemed necessary to conceal the fact of such excess loans from the banking authorities.   It enjoyed all the benefits growing out of its dealings with the plaintiff.   It failed to keep faith with the plaintiff and this lawsuit resulted.   There is much to the argument of plaintiff's counsel that the defendant, having received the benefits, now seeks to avoid liability by pleading and proving its own violation of the law, and it ought not to be permitted to do so.   But, neither is the plaintiff bank guiltless.   It knew of the illegality of the defendant's transactions and did not hesitate for its own advantage to assist defendant in carrying on and concealing those transactions.   To permit a recovery on the part of the plaintiff in this case is, in effect, to enforce an illegal contract; illegal and against public policy because it contemplated a violation of penal statutes.   In such case the law will give no relief but will leave the parties where it finds them.   See Dows v. Glaspel, 4 N. D. 251, 60 N. W. 60; Wald v. Wheelon, 27 N. D. 624, 147 N. W. 402; Exchange Bank v. Clay Center State Bank, 100 Neb. 278, 159 N. W. 409; Bank of Orland v. Harlan, 188 Cal. 413, 206 Pac. 75; McMullen v. Hoffman; 174 U. S. 639, 43 L. ed. 1117, 19 Sup. Ct. Rep. 839.   See also note in 12 L.R.A. (N.S.) 575.

Plaintiff contends that there was no illegality in so far as the contract here sued upon was concerned.   It urges that the state alone can complain on account of the acts of the defendant in making the excess

loans. It contends that such loans are not void but voidable and that, therefore, the plaintiff should be entitled to recover. But. this action is not on the excess notes, nor is it against the makers of those notes. If such were the case, then the plaintiff's contention might be sound. See Anderson v. First Nat. Bank, 5 N. D. 451, 67 N. W. 821; First Nat. Bank v. Messner, 25 N. D. 263, 141 N. W. 999; Wald v. Wheelon, 27 N. D. 624, 147 N. W. 402. The instant case, however, is wholly different. It is an action for money paid in accordance with an agreement entered into for the purpose of enabling the defendant to violate the law and conceal that violation. The plaintiff can not recover. The judgment must be reversed and the trial court directed to order judgment for the defendant.

BRONSON, Ch. J., and CHRISTIANSON, JOHNSON, and BIRDZELL, JJ., concur.