H. O. SMITH, Plaintiff-Respondent, v. GEORGE W. RENNIX et al., Defendants. FARMERS & MERCHANTS BANK OF HANKINSON, a Corporation, Defendant-Appellant.

(204 N. W. 843.)

**Banks and banking — bank's contracts to purchase land otherwise than as permitted by statute are unenforceable; its contract to pay mortgage on land conveyed, held unenforceable.**

Under the laws of this state a banking corporation is authorized to employ its money and other assets in the purchase of real estate in the following circumstances, only: (1) It may invest not to exceed a certain amount of its capital stock and unimpaired surplus in a banking house, including the land on which such banking house is situated (Comp. Laws, 1913, § 5151); (2) "It may purchase, hold and convey such other real estate as shall be mortgaged

to it in good faith by way of security for loans, or for debts previously contracted; such as may or shall be mortgaged to it in good faith in satisfaction of debts previously contracted in the course of its dealings; such as it shall purchase at sales under judgments, decrees or mortgages held by the corporation, or shall purchase to secure debts due it." But such banking corporation has no authority to engage in the general real estate business, and employ its funds in the purchase of real estate or enter into contracts, and pledge its credit, for the purchase of real estate in any other circumstances than those so specified; and all contracts for the purchase of real estate in -circumstances not so authorized are illegal and unenforceable. For reasons stated in the opinion it is *held* that the contract in suit is one violative of the express provisions of laws regulating banking; and, hence, is illegal and furnishes no basis for a cause of action.

Opinion filed June 29, 1925.

Banks and Banking, 7 C. J. § 224 p. 589 n. 35.

From a judgment of the District Court of Richland County, *McKenna, J.,* defendant, Farmers & Merchants Bank of Hankinson, appeals.

Reversed, and remanded with directions to dismiss the action.

*Lauder & Lauder,* for appellant.

"No bank shall, as principal, employ its money or other of its assets, directly or indirectly, in trade or commerce, or employ or invest any of its assets, or funds in the stock of any corporation, bank, partnership, firm or association."

It is well settled that buying and selling real estate is included within the phrase "trade and commerce." See May v. Sloan, 101 U. S. 231; Re Pinkey (Kan.) 27 Pac. 179; Betz v. Maier (Tex.) 33 S. W. 710; Re Master Granite Blue Stone Cutters Asso. 23 Pa. Co. Ct. 517; People v. Sheldron, 21 N. Y. Supp. 859.

Sections 5151, 5152, 5153 and 5187, Code 1913, and chapter 54 of the Session Laws of 1915.

"The word, 'commerce' is undoubtedly in its usual sense a larger word than 'trade' in its usual sense. Sometimes 'commerce' is used to embrace less than 'trade' and sometimes 'trade' is used to embrace as much as 'commerce.' They are in this statute synonymous." United States v. Patterson, 53 Fed. 603.

"It is not disputed that if ultra vires transactions are to be regarded

as being illegal in the original sense of the word, they must be regarded as absolutely void and consequently not susceptible of enforcement. There can be no civil right where there is no legal remedy, and there can be no legal remedy for that which is illegal." L.R.A.1917A, p. 739.

"There can be no direct ratification of an illegal contract by a corporation any more than by an individual. On this rule it would seem to be an unavoidable corollary that such a contract cannot be indirectly validated by the operation of an estoppel." L.R.A.1917A, p. 782.

"The final element of an equitable estoppel is that the person claiming it must have been misled into such action that he will suffer injury if the estoppel is not declared. That is, the person setting up the estoppel must have been induced to alter his position, in such way that he will be injured if the other person is not held to the representation or attitude on which the estoppel is predicated. Furthermore, an equitable estoppel cannot arise except when justice to the rights of others demands. It was never intended to work a positive gain to a party." 10 R. C. L. p. 697, ¶ 25.

*Schneller, Heder & Schneller,* for respondent.

Where there is no alteration of the instrument apparent on its face the burden of proof is upon the defendant to show the alteration claimed. 1 R. C. L. p. 1041.

"Prima facie the contracts of corporations are valid. There is no presumption of excess of power attaching to them and the burden of showing they should be avoided is on the impeaching party." 7 R. C. L. ¶ 580, p. 589.

"As there is no presumption that a corporation has exceeded its powers the defense of ultra vires must be pleaded." 7 R. C. L. p. 677.

"If the defendant wishes to interpose the defense of ultra vires in an action by corporations against him he should plead it. And in an action against a corporation the plaintiff need not set out in his complaint or declaration the capacity of the corporation to make the contract sued on. Where the defense of ultra vires is allowable to a corporation the corporation must plead it specially." 5 Enc. Pl. & Pr. p. 95; Griesa v. Mass. Benefit Asso. 133 N. Y. 619; Folsom v. School Directors, 91 Ill. 402.

A corporation cannot commit the rank injustice of enriching itself

by retaining the fruits of a contract and then repudiate it. American Exp. Co. v. Citizens State Bank, 181 Wis. 172, 194 N. W. 427.

"A contract of a corporation that is ultra vires, not because prohibited by positive law, or inherently vicious, and not because the corporation could not, under any circumstances make the contract, but solely because of the existing circumstances and conditions under which it was made, is never void, and the plea of ultra vires will not avail either party to such contract when the contract has been fully executed by the other party."

"Corporations have no right to violate their charters. But they have the capacity to do so. The plea of ultra vires, according to its just meaning, imports not that the corporation could not, and in fact did not, make the unauthorized contract, but that it ought not to have made it." Bissel v. Mich. S. R. Co. 22 N. Y. 262.

CHRISTIANSON, Ch. J. This is an action for the foreclosure of a mortgage on real property and for a personal judgment against the defendants for any remaining deficiency. The material facts are as follows: On September 2nd, 1919, the plaintiff was the owner of the real property involved in this action. On or about that day he sold the same and conveyed it by warranty deed to the defendant George W. Rennix. In consideration therefor the said Rennix paid $1000.00 in cash and assumed and agreed to pay a mortgage of $3000.00 outstanding against the property, and he further executed and delivered. to the plaintiff his notes for $5000.00, and a mortgage upon the premises to secure such notes. At the time this transaction occurred Rennix was cashier of the defendant bank. On March 4th, 1920, said Rennix executed and delivered a special warranty deed, whereby he conveyed the said real property to the said defendant bank. This deed contained a clause to the effect that said premises "are free from all encumbrances except a first mortgage of $3000.00 of record. and a second mortgage of $5000.00 which party of the second part (defendant bank) assumes as part of the purchase price." It is this clause which gave rise to, and is involved in, this controversy. It is contended by the plaintiff that by virtue of this clause the appellant contracted to pay the indebtedness in question here and that, consequently, plaintiff is entitled to judgment therefor. On the other hand, it is contended by

the defendant bank that there is no legal obligation on the part of the defendant bank to pay such indebtedness. It is claimed that the deed from Rennix to the bank was not, in fact, intended to transfer and vest the title to the property in the bank; that certain stockholders of the bank were engaged in the business of buying and selling land, and that in carrying on this business they used the name of the bank as a matter of convenience in making transfers, but that the bank had no actual interest in and received none of the profits out of such transactions; that the transaction out of which this action arose is one of that kind; that the land in question was not purchased by the bank at all and that it received absolutely no consideration for the alleged contract on which this suit is brought and that such contract is one which the bank is prohibited by express law from entering into. It is further contended that such clause did not appear in the deed at the time of the execution and delivery thereof, but that the clause was afterwards inserted and that the same constitutes a material alteration of the deed, and, hence, is not binding upon the defendant bank. The trial court made findings and conclusions in favor of the plaintiff. Judgment was entered accordingly and the defendant bank has appealed to this court and demanded a trial anew. In our opinion the judgment is clearly erroneous and must be reversed.

The laws of this state provide:

"*No bank shall as principal employ its money or other of its assets, directly or indirectly, in trade or commerce, nor employ or invest* any of its assets or funds in the stock of any corporation, bank, partnership, firm or association, nor shall it invest any of its assets in speculative margins of stocks, bonds, grain, provisions, produce or other commodities, except that it shall be lawful for banks to make advances for grain or other products in store or in transit to market; provided, nevertheless, that this Act shall not be construed as in any way preventing a bank from investing such part of its funds in stock of the Federal Reserve Bank of this district as may be necessary to become a member of the Federal Reserve Association and from carrying such stock among its assets." Sec. 5187, Comp. Laws 1913, as amended by chapter 54, Laws 1915.

"It shall be unlawful for any corporation having banking powers and a capital stock of twenty thousand dollars or more, to invest over

thirty per cent of such stock and unimpaired surplus in banking house furniture and fixtures, including the lot, piece or parcel of land on which such banking house is located; provided, that similar corporations with a capital stock of ten thousand dollars and less than fifty thousand dollars may invest forty per cent of its stock and unimpaired surplus and those with fifteen thousand dollars and less than twenty thousand dollars stock may invest thirty-five per cent of its capital stock and unimpaired surplus in such banking house, furniture, fixtures and lot, piece or parcel of land on which such banking house is located." Comp. Laws 1913, § 5151.

"It shall have the power to purchase, hold and convey such other real estate as shall be mortgaged to it in good faith by way of security for loans, or for debts previously contracted.

"Such as may or shall be mortgaged to it in good faith in satisfaction of debts previously contracted in the course of its dealings.

"Such as it shall purchase at sales under judgments, decrees or mortgages held by the corporation, or shall purchase to secure debts due it; but no banking corporation shall hold the possession of any real estate under mortgage, or title and possession of any real estate purchased to secure indebtedness, for a longer period than five years from the date of acquiring title thereto. And all real estate heretofore and hereafter conveyed by any such banking corporation, shall be deemed to have been acquired, held and disposed of in conformity with the provisions of this chapter." Comp. Laws 1913, § 5152.

"Any banking corporation violating the provisions of this act (§§ 5151–5154) shall be subject to a fine of not more than five hundred dollars and cancellation of its organization certificate." Comp. Laws 1913, § 5153.

"Any officer of any banking association, savings bank or trust company violating or knowingly permitting to be violated, the provisions of this chapter, not herein specially provided for shall upon conviction thereof pay a fine of not less than fifty dollars nor more than five hundred dollars for each offense, to be recovered before any court having competent jurisdiction, and all fines and penalties so recovered shall be paid into the state treasury." Comp. Laws 1913, § 5173.

These statutes were intended primarily for the protection of depositors. Experience has demonstrated the necessity of such regulatory

measures. If a bank may employ all of its assets in the purchase of real estate, and does so, it will hardly be in position to meet its obligations to its depositors. In order to give these regulatory measures force, the legislature has imposed a penalty both upon the banks, and upon the officers of banks, who violate them. And contracts made in violation of these statutory provisions are not merely *ultra vires,* but unlawful and void. Comp. Laws 1913, § 5922; Wald v. Wheelon, 27 N. D. 624, 147 N. W. 402; Oakes Nat. Bank v. Farmers' State Bank, ante, 49, 201 N. W. 696; 13 C. J. 410 et seq.

In Wald v. Wheelon, supra, this court held that a contract on the part of a bank to make a loan to an individual in excess of that limit authorized by the statute (Comp. Laws 1913, § 5172) was illegal, and that an alleged breach thereof furnished no basis for a cause of action.

In Oakes Nat. Bank v. Farmers' State Bank, supra, this court held that "a contract entered into between two banking corporations for the purpose of enabling one of them to make excess loans in violation of § 5172, Comp. Laws 1913, and to conceal the fact of such violations from the state banking authorities is illegal and contrary to public policy;" and that, consequently, the courts will not aid either party in enforcing the contract.

The present action is based upon the contract. The rights sought to be enforced arise by virtue thereof, and not otherwise. If the contract is illegal and falls within the rule announced in Oakes Nat. Bank v. Farmers' State Bank, supra, then plaintiff has no cause of action. And, we are agreed that it does. In other words we are wholly agreed that the alleged agreement on the part of the bank to assume and pay to the plaintiff the amount of the indebtedness secured by plaintiff's mortgage was, and is, an unlawful contract. Such agreement is violative of the express policy of laws of this state which were enacted to promote the general welfare. There is no contention that the land in question had been mortgaged to the bank or that it was conveyed in payment, or to secure the payment, of some debt owing to the bank. On the contrary the undisputed evidence shows that the land was not conveyed for any such purpose. According to the evidence certain stockholders (the evidence is not clear whether all the stockholders participated) engaged in the business of buying and selling real estate. For the purpose of carrying on this business they had an account in

the bank under the name of "stockholders' account." In purchasing lands disbursements were made by checks drawn on this account and profits realized from land deals so transacted were turned into it. Rennix, who was the cashier of the bank at the time the transaction in question here took place and the principal witness for the plaintiff in this action, testified that the title to lands purchased by and for the stockholders through the "stockholders' account" were taken in the name of the bank as a matter of convenience; but that the bank had no interest in the transactions and received no profits therefrom; and according to his testimony the transaction involved here was one of that kind.

It is contended that the defendant bank is estopped to deny the validity of the contract or to assert the illegality thereof. Leaving wholly on one side the question whether the doctrine of estoppel can ever apply so as to render an illegal agreement enforceable, we are wholly agreed that there is in any event no basis for its application here. The plaintiff in this case did not part with anything in reliance upon the contract which he seeks to enforce and has in no manner acted thereon to his injury or prejudice.

It is further contended that the bank sold and conveyed the land to one Milbrandt and received a profit on the transaction and that it ought not to be permitted to retain the profit and be relieved from its obligation. We find it unnecessary to consider whether the contention thus advanced is sound or unsound. It is sufficient to say that we do not so construe the evidence. As we construe the evidence it is all to the effect that before the land was deeded to the bank by Rennix he (Rennix) had entered into a contract for the sale thereof to one Milbrandt; and that the bank later deeded the land to Milbrandt in conformity with this contract but that it neither expected nor received any profit in the transaction, that whatever profits were realized went into the stockholders' account for distribution among the persons who participated therein.

The judgment appealed from is reversed and the cause remanded with direction to dismiss the case as against the appellant.

Nuessle, Birdzell, Burke, and Johnson, JJ., concur.
52 N. D.—60.