CHRISTIANSON, Ch. J., and BURKE, JOHNSON, and NUESSLE, JJ., concur.

---

JOHN JARSKI, Respondent, v. FARMERS AND MERCHANTS STATE BANK OF HANKINSON, NORTH DAKOTA, Appellant.

(206 N. W. 773.)

**Banks and banking — contract by banking association to buy land held void as contrary to statute.**

1. Plaintiff brought this action to enforce against the defendant, North Dakota banking association, a contract by the latter to purchase real estate. The record examined and *held*, for reasons stated, that such contract is contrary to the positive prohibition of the statute (chapter 28 of the Civil Code, §§ 5146 to 5191, inclusive, Comp. Laws 1913, as amended), governing the organization and conduct of banking corporations, and therefore unlawful and void.

**Contracts — if contract is void because of violating statute, courts will not compel its performance.**

2. Where a contract is unlawful and void by reason of transgressing the positive prohibition of a statute, the courts will not lend their aid to compel its performance at the instance of a party thereto.

**Contracts — party resisting performance of contract void because contrary to statute is not estopped to plead illegality and invalidity of contract.**

3. In a suit brought to compel the performance of a contract which is unlawful and void by reason of being contrary to positive statutory prohibitions, the party resisting performance is not estopped to plead the illegality and invalidity of such contract.

---

Note.— (1) Power of bank to deal in real estate, see 3 R. C. L. 429.

(2) Illegal contracts not enforceable, see 6 R. C. L. 816, et seq.; 2 R. C. L. Supp. 211; 4 R. C. L. Supp. 442; 5 R. C. L. Supp. 370.

(3) Pleading illegality of contract necessary, see 6 R. C. L. 818; 4 R. C. L. Supp. 442.

(4) Persons dealing with corporation bound to take notice of extent of power to contract, see 7 R. C. L. 513; 2 R. C. L. Supp. 405; 5 R. C. L. Supp. 409.

**Corporations — one dealing with corporation held charged with knowledge of limitations and prohibitions imposed by law on its power to contract.**
4. One who deals with a corporation is charged with knowledge of the limitations and prohibitions imposed by law upon its power to contract.

Opinion filed December 21, 1925.

Banks and Banking, 7 C. J. § 224 p. 589 n. 35. Contracts, 13 C. J. § 440 p. 493 n. 18; p. 496 n. 23. Corporations, 14a C. J. § 2082 p. 251 n. 96.

Appeal from the District Court of Richland County, *Wolfe, J.*

From a judgment in favor of the plaintiff and from an order denying his motion for judgment notwithstanding the verdict, or for a new trial, defendant appeals.

Reversed.

*Lauder & Lauder,* for appellant.

"Trade means the craft or business which a person has learned and which he carries on as a means of livelihood; a purchase or sale; a bargain; the exchange of commodities for other commodities, or for money; the business of buying and selling, or dealing by way of sale or exchange; commerce; traffic." Re Masters Granite & Blue Stone Cutters' Asso. 23 Pa. Co. Ct. 520.

" 'Trade' in its broadest significance, includes, not only the business of exchanging commodities, by barter, but the business of buying and selling for money or commerce and traffic generally. Hence the sale of land is a trade." May v. Sloan, 101 U. S. 231.

"A contract of a corporation that is ultra vires not because prohibited by positive law, or inherently vicious, and not because the corporation could not, under any circumstances, make the contract, but solely because of the existing circumstances and conditions under which it was made, is never void, and the plea of ultra vires will not avail either party to such contract when the contract has been fully executed by the other party." Tourtelot v. Whited, 9 N. D. 467.

"As a general rule, an illegal contract between natural persons is void and no action can be maintained upon it. Ex dolo malo non oritur actio. The same is true of an illegal contract between corporations or between a corporation and a natural person." Providence Tool Co. v. Norris, 2 Wall. 45; White v. Franklin Bank, 22 Pick. 181; Wilson

v. Torchon Lace & Merc. Co. 167 Mo. App. 305, 149 S. W. 1156; Pratt v. Short, 49 N. Y. 437. See also De Lavergne Refrigerating Mach. Co. v. German Sav. Inst. 175 U. S. 40.

*W. E. Purcell* and *Schneller, Heder, & Schneller,* for respondent.

Court will presume that the contract is legal and valid; that it will presume that the bank and its officers did not wilfully and deliberately do an act which would constitute a crime and subject the bank and themselves personally to a penalty; and therefore, the burden is on the defendant to show that the contract was illegal. Krause v. Krause, 30 N. D. 54, 151 N. W. 991; 13 C. J. 760, 761, ¶ 947, Contracts; Page, Contr. ¶¶ 506, 1120; Comp. Laws 1913, § 10,831.

"In general, where a statute prohibits a transaction, although without, in terms, declaring it void, it is void if done in violation of the statute. But this rule does not apply where the statute does not declare the transaction void, but only prohibits one of the parties from engaging in it." Watrous v. Blair, 32 Iowa, 58.

"When the officers of a savings bank invest its funds in a manner forbidden by statute, such illegal action of the officers does not impair the validity of the investment." Holden v. Upton, 134 Mass. 180.

"A prohibitory statute may itself point out the consequences of its violation, and if, on a consideration of the whole statute, it appears that the legislature intended to define such consequences, and to exclude any other penalty or forfeiture than such as is declared in the statute itself, no other will be enforced." 3 Fletcher, Corp. p. 2707, ¶ 1622.

"If the agents of a public corporation make unauthorized loans of public money, contrary to statute, the contract of loan is itself illegal, but the public corporation is not in pari delicto and may recover the money loaned." Page, Contr. ¶ 525, p. 815.

"The principal of estoppel thus applied has its foundation in a wise and salutory policy. It is a means of repose. It promotes fair dealing. It cannot be made an instrument of wrong or oppression and it often gives triumph to right and justice where nothing else known to our jurisprudence can, by its operation secure those ends." Daniels v. Tearney, 102 U. S. 415, 26 L. ed. 187.

NUESSLE, J. Plaintiff brought this action to recover the purchase

price of certain land which he claims he sold to the defendant bank. In his complaint he alleged that he was the owner of the land; that he bargained to sell the same to the defendant, and that he and the defendant entered into a written contract of sale and purchase; that the defendant failed to make the payments as required by the terms of this contract; and asked judgment for the amount of the payments past due together with interest thereon. The defendant answering, (1) denied that it bought the land or agreed to pay plaintiff therefor, (2) alleged that if it did enter into such a contract of purchase and sale as alleged, that the same was ultra vires and illegal and therefore unenforceable and, (3) that plaintiff sold the land to others by whom the name of the defendant bank was used for convenience, without authority so to do.

The case was tried to a jury. The record discloses the following facts. In 1919, the plaintiff owned a quarter section of farm land in South Dakota. The defendant was and is a bank organized and existing under and by virtue of the laws of the state of North Dakota and having its place of business at Hankinson, North Dakota. In 1919, John R. Jones was the president and a director, and Chas. Hein a director of the defendant bank. In July of 1919, plaintiff entered into a contract with Jones and Hein to sell the land in question. This contract was reduced to writing and executed by plaintiff and his wife as vendors and by the defendant bank through John R. Jones, president, as vendee. The price to be paid was $10,800, payable $1,000 on the execution of the contract, and $1,000 and interest annually thereafter, the purchaser to assume a mortgage of $800 then against the land. The payment of $1,000 was made at the time the contract was executed. This payment was made by check signed by John R. Jones, Pres., drawn on the defendant bank and paid out of an account in that bank known as the "stockholders' account." There is some question as to whether the check was, as executed and delivered, executed by the Farmers and Merchants Bank, the defendant, by John R. Jones, Pres., or by "stockholders' account" by John R. Jones, Pres. In December, 1919, the plaintiff surrendered possession of the land under the contract. Thereafter, and up to and including the time of the trial, the land was farmed by tenants. These tenants rented the land either from Jones or from Hein, or from some other officer of the defendant bank.

Such repairs as were paid for by the landlord, were paid for by some one of these parties from "stockholders' account." The landlord's threshing bill was paid for by some one of these parties, either by cash or check, drawn on "stockholders' account." The proceeds of the landlord's share of the crops was deposited to the credit of the "stockholders' account." A second payment on the contract of $1,000 and two interest payments of something over $500 each were made by John R. Jones, or some other of the officers of the defendant bank by check drawn on "stockholders' account." In 1921, the $800 mortgage debt matured and at the instance of Jones, Jarski renewed this in the amount of $1,600, and the $800 increase went into the "stockholders' account" in the bank. In 1921, two payments of $1,000 each were due and unpaid on the contract and the plaintiff agreed to take a note for these payments. This note was signed by Hein, and by John R. Jones, as president of "stockholders' account." See Jarski v. Jones, 52 N. D. 25, 201 N. W. 688. It appears that some years prior to the transaction out of which this law suit arose, an account was opened on the books of the defendant bank, known as "stockholders' account." The initial credit in this account arose by reason of the deposit therein of $6,000, being 60 per cent of the dividend declared by the defendant bank in 1916; another credit is shown for dividends declared in 1918. This account appears to have been a live account from 1916 on. At the time the initial payment of $1,000 was made to Jarski, the balance therein was something over $14,000. Other real estate transactions were conducted by and through it, as for example, see Smith v. Rennix, 52 N. D. 938, 204 N. W. 843. It does not expressly appear for whose benefit the "stockholders' account" was carried, or who the owners were. It does appear that at least on one occasion, an assessment was made upon the various persons who were then stockholders of the bank, in an amount equal to 15 per cent of their stock in the bank for the benefit of "stockholders' account." The books of the account were kept in the bank and by the officers of the bank without any compensation therefor.

It is the contention of the defendant that it did not buy the land in question; that the real purchaser was the "stockholders' account;" that for convenience only, the contract for deed ran to the defendant bank; that in any event, if the contract was in fact made by the bank,

it was ultra vires and illegal and therefore unenforceable. On the other hand, the plaintiff contends that all his dealings with reference to the sale of the land were made with the officers of the bank and that the bank was in fact the purchaser of the land; that the contract is execut-ed, the bank has had the benefit of it and, therefore, it cannot rely upon the defense of ultra vires and illegality. The court in submitting the case to the jury charged them with reference to the defenses set out in the answer and relied upon by the defendant; that, under the facts, the defense that the contract was illegal and ultra vires, was not available to the defendant and that the only question for their de-termination was as to whether in fact the contract of purchase and sale was made by the plaintiff with "stockholders' account," or with the defendant bank; that the burden was on the plaintiff to establish that the contract was made with the defendant bank and that if he did so establish by a preponderance of the evidence, the verdict must be for the plaintiff. The jury returned a verdict for the plaintiff. There-after, the defendant moved for a new trial or for judgment non obstante. The motion was denied and judgment was entered on the verdict. This appeal is from the judgment and from the order denying the defend-ant's motion for a new trial or for judgment non obstante.

The defendant has assigned numerous errors. Many of the errors assigned and urged on this appeal hinge upon the second defense plead-ed in the answer; that is, that in any event, so far as defendant is con-cerned, the contract was ultra vires and illegal, and hence unenforceable. Assuming that the defendant was the purchaser of the land and the real party in interest to this contract, if this question thus raised and pressed is pivotal and vital, it will be unnecessary to consider any other in dis-posing of this appeal.

Is the contract here involved ultra vires and illegal? The answer awaits a consideration of the transaction in question in the light of the statutes governing banking corporations. ". . . Certain contracts on the part of corporations may be prohibited by positive law, either statutory or common. Where such contracts are made by corporations, they are, of course, unlawful. They are mala prohibita, and void, for the same reason that the prohibited contract of an individual would be void. Yet courts have termed them ultra vires, and have then pro-ceeded to say that ultra vires contracts were void, and might be dis-

regarded at pleasure. More properly speaking, ultra vires contracts of a corporation are such as do not in any manner serve the accomplishment of the purposes for which the corporation is chartered. They are contracts not positively forbidden, but impliedly forbidden, because not expressly or impliedly authorized. . . ." Tourtelot v. Whithed, 9 N. D. 467, 84 N. W. 8. Chapter 28 of the Civil Code, §§ 5146 to 5191 inclusive, Comp. Laws 1913, as amended, governs the organization and conduct of banking corporations. The following sections of this chapter are particularly pertinent in the determination of the question here involved. Section 5187, Comp. Laws 1913, as amended by chapter 54, Sess. Laws 1915, prohibits a bank as principal from employing its money, or other of its assets, directly or indirectly, in trade or commerce. Section 5151, Comp. Laws 1913, makes it unlawful for any corporation having banking powers to invest more than a certain proportion of its stock in banking house, furniture and fixtures, including the lot, parcel or piece of land on which such banking house is located, while § 5152, a part of the same enactment (Sess. Laws 1911, chap. 54, as amended by Sess. Laws 1913, chap. 52), provides that:

"It (a banking corporation) shall have the power to purchase, hold and convey such other real estate as shall be mortgaged to it in good faith by way of security for loans, or for debts previously contracted.

"Such as may or shall be mortgaged to it in good faith in satisfaction of debts previously contracted in the course of its dealings.

"Such as it shall purchase at sales under judgments, decrees or mortgages held by the corporation, or shall purchase to secure debts due it; but no banking corporation shall hold the possession of any real estate under mortgage, or title and possession of any real estate purchased to secure indebtedness, for a longer period than five years from the date of acquiring title thereto. And all real estate heretofore and hereafter conveyed by any such banking corporation, shall be deemed to have been acquired, held and disposed of in conformity with the provisions of this chapter."

Section 5153 provides that any banking corporation violating the provisions of §§ 5151 and 5152 shall be subject to a fine of not more than $500 and cancellation of its certificate, and § 5173 makes any violation, by an officer of a banking association, of any of the provisions of

chapter 28, supra, a misdemeanor, and provides a penalty therefor. These various statutes were considered and their effect measured in the case of Smith v. Rennix, 52 N. D. 938, 204 N. W. 843, wherein this court said:

"These statutes were intended primarily for the protection of depositors. Experience has demonstrated the necessity of such regulatory measures. If a bank may employ all of its assets in the purchase of real estate, and does so, it will hardly be in position to meet its obligations to its depositors. In order to give these regulatory measures force, the Legislature has imposed a penalty both upon the banks, and upon the officers of the banks, who violate them. And contracts made in violation of these statutory provisions are not merely ultra vires, but unlawful and void. Comp. Laws 1913, § 5922; Wald v. Wheelon, 27 N. D. 624, 147 N. W. 402; Oakes Nat. Bank v. Farmers' State Bank, 52 N. D. 49, 201 N. W. 696; 13 C. J. 410, et seq."

How was this contract here in question, assuming that it was entered into by the defendant, one which could directly or incidentally tend to attain and accomplish the objects and purposes for which the defendant bank was organized and chartered? Was it a contract prohibited by the laws of the state of North Dakota? That is, was it ultra vires or unlawful? Keeping in mind the distinction drawn in Tourtelot v. Whithed, supra, the inevitable conclusion is that it was both ultra vires and unlawful. This land, the subject of the contract, was farming land situated in the state of South Dakota. The bank was a North Dakota bank. Its place of business was at Hankinson, North Dakota. It seems apparent that if the defendant bank contracted to buy this land it did so for purely speculative reasons. The transaction was a business transaction in real estate. We think it no stretch of construction to say that considered as such it was contrary to the prohibition of § 5187, supra, against the bank's employing any of its assets in trade or commerce. Indeed, it would require a stretch to hold otherwise. Likewise, it was contrary to the prohibition of §§ 5151 and 5152. Certain it is that the land could not be used for any of the proper business purposes of the bank. It is just as certain that it was not taken in payment or satisfaction of an obligation to the bank. Nor was it taken as security for any advancement made to any purchaser of the land. Nor did the transaction come within the purview

of the provision permitting real estate to be acquired by way of mortgage and foreclosure, or at execution sale. The bank was engaging in the real estate business, no more no less. The transaction was a palpable transgression against both the letter and the spirit of the statute. It follows that so far as the bank was concerned, the contract was not merely voidable but void. See Smith v. Rennix, supra, and cases cited; 14a C. J. 309 et seq.

The plaintiff strenuously insists that in the instant case the contract was fully executed; that the plaintiff has parted with his farm; that the defendant has the farm and is now seeking to avoid payment therefor; that it is endeavoring to take advantage of its own criminal practice for its own benefit and to the disadvantage of the plaintiff; that injustice will result to the plaintiff if he, who was not forbidden to enter into the contract is deprived of his remedy as against the bank; if he is penalized for the unlawful acts of the officers of the bank with whom he dealt; that the law will be satisfied if the officers are prosecuted, and the bank's charter forfeited, and contemplates no more than that. It seems to us, however, that the plaintiff misconceives the situation. In the first place, the defendant has come into court denying that it made the contract; it disclaims any rights under the contract; its says its name was used for purposes of convenience only, and that in fact it was not a contracting party. In the next place, the contract is not fully executed. It is true that the plaintiff has surrendered possession of the land to someone under the contract. Conceding that the bank has been, by virtue of that surrender, using and occupying the land, nevertheless, the plaintiff still retains legal title. The instant action, while brought on the contract to recover the purchase price is, nevertheless, in effect, an action for specific performance. Suppose that the shoe were on the other foot; suppose that the land had gone up in price instead of going down—(Ay, there's the rub!)—and that the bank were bringing an action to compel the plaintiff to convey, the plaintiff resisting on the ground that the contract was ultra vires and illegal and the bank could not under the law, take title. Surely, under such circumstances, no court would lend its aid to compel the plaintiff to perform. This action is the counterpart of such an action, though in form an action for the recovery of money on the contract.

Plaintiff contends that the defendant is estopped to plead the ultra

vires and illegality of the contract. It is true, there are many cases in the books wherein parties to contracts have been held estopped to plead their ultra vires. But, invariably, in those cases the contracts were merely ultra vires and not illegal. These were fully executed and the parties had enjoyed the fruits thereof. Where, however, the contract is illegal and void, as we have held the one here involved to be, no estoppel can be raised. See 14a C. J. 309 and 587, and cases cited.

Counsel further urges that plaintiff was an ignorant, unlettered man, who relied upon the honesty and good faith of those with whom he dealt; that he did not know the contract was ultra vires and unlawful. But plaintiff, when he entered into the contract, whatsoever his ignorance or actual knowledge of the law, was charged with knowledge of the law. See Anderson v. First Nat. Bank, 5 N. D. 451, 67 N. W. 821; Wald v. Wheelon, 27 N. D. 624, 147 N. W. 402; Central Transp. Co. v. Pullman's Palace Car Co. 139 U. S. 25, 35 L. ed. 56, 11 Sup. Ct. Rep. 478. Plaintiff also insists that he has no remedy if he cannot recover in this action. If this were so that fact could not help him. That fact would not warrant resort to the law to breach the law. To enforce the contract would be to disregard the policy declared by the legislature regarding the conduct of banking corporations and to defeat the salutary purpose underlying the prohibitions imposed upon such corporations by legislative enactment.

The judgment of the district court will be reversed and the case remanded with directions to the district court to order judgment for the defendant notwithstanding the verdict. It is so ordered.

CHRISTIANSON, Ch. J., and BIRDZELL, BURKE, and JOHNSON, JJ., concur.